

**U.S. Department of Justice**

Bureau of Alcohol, Tobacco, Firearms and Explosives

Martinsburg, WV 25405

www.atf.gov

OCT 3 1 2017

907010:WJS
3311/307364

Mr. Martin Ewer
2141 Main Street, Suite G
Dunedin, FL 34698

Dear Mr. Ewer:

This refers to your correspondence and accompanying sample sent to the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Firearms Technology Industry Services Branch (FTISB), for evaluation.

You ask several questions, if the addition of this sample, a **Shockwave Technologies Blade Pistol Stabilizer 2.0**, would design or redesign and change the classification of the host firearm in a manner that would cause it to be classified as a "rifle" and thus a "firearm" regulated by the National Firearms Act (NFA), specifically, 26 U.S.C. § 5845(a)(3). You describe this item as "neither designed or intended to be fired from the shoulder". Prior to delineating our response, a review of the pertinent definitions is necessary:

The Gun Control Act of 1968 (GCA) defines **"firearm"** to include:

"...any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive...the frame or receiver of any such weapon...[and]...any firearm muffler or firearm silencer...." (See 18 U.S.C. § 921(a)(3).)

The GCA, 18 U.S.C. § 921(a)(7), defines **"rifle"** as "a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger."

**EXHIBIT 5**

Further, the GCA, 18 U.S.C. § 921(a)(8), defines "**short-barreled rifle**" as—

*"... a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle (whether by alteration, modification, or otherwise) if such weapon, as modified, has an overall length of less than twenty-six inches."*

Also, the GCA, 18 U.S.C. § 921(a)(29), defines "**handgun**" to include *"a firearm which has a short stock and is designed to be held and fired by the use of a single hand."*

In addition, 27 CFR § 478.11 defines a "**pistol**" to mean *"a weapon originally designed, made and intended to fire a projectile (bullet) from one or more barrels when held in one hand, and having (a) a chamber(s) as integral part(s) of, or permanently aligned with, the bore(s); and (b) a short stock designed to be gripped by one hand at an angle to and extending below the line of the bore(s)."*

The National Firearms Act (NFA), 26 U.S.C. § 5845(a), defines "**firearm**" as:

*"... (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length;* **(3) a rifle having a barrel or barrels of less than 16 inches in length;** *(4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (6) a machinegun; (7) any silencer (as defined in 18 U.S.C. § 921); and (8) a destructive device. The term 'firearm' shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the ...[Attorney General] ... finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon."*

Finally, the NFA, § 5842, "**Identification of firearms**," states as follows:

*"...(a) Identification of firearms other than destructive devices. - Each manufacturer and importer and anyone making a firearm shall identify each firearm, other than a destructive device, manufactured, imported, or made by a serial number which may not be readily removed, obliterated, or altered, the name of the manufacturer, importer, or maker, and such other identification as the ...[Attorney General] ...may by regulations prescribe. (b) Firearms without serial number. - Any person who possesses a firearm, other than a destructive device, which does identify the firearm with a serial number assigned by the...[Attorney General] ...and any other information the...[latter]... may by regulations prescribe."*

The FTISB evaluation of the submitted sample revealed that the device is constructed of a white in color, rigid plastic/polymer type material. The Blade Pistol Stabilizer 2.0 incorporates a stabilizing brace, which the operator rests against the inside of their forearm when in the firing position. Doing so stabilizes the firearm in the horizontal plane. The friction created between the user's forearm and the stabilizer then stabilizes the firearm in the vertical plane. This product is similar in overall appearance to a Shockwave Technologies manufactured *Blade AR Pistol Stabilizer and Blade Pistol Stabilizer* previously examined by FTISB, except for several design features.

The current submission has <u>one</u> attachment point for a strap or sling as opposed to <u>three</u> attachment points in the *most recent* evaluated design, which was designed to further secure the device to the operator's forearm to stabilize their firearm in both the horizontal and vertical planes. Please note, that a sling or strap was not evaluated as a part of the previous submission. We noted the current submitted sample is also devoid of any kind of strap or sling.

The submitted item includes a metal carbine buffer tube adjustment lever to enable the operator to secure the Blade Pistol Stabilizer 2.0 in various positions on a 4-position, AR-type carbine buffer tube. FTISB personnel found the submitted Blade Pistol Stabilizer 2.0 can be held in place, in four distinct positions, without the use of a set screw as found in a Shockwave Technologies Blade Pistol Stabilizer depicted below.

To further illustrate the differences between these accessories, please see the following photographs:



**Previously Evaluated "Blade Pistol Stabilizer"**



**Shockwave Technologies "Blade Pistol Stabilizer 2.0" Right Side**



**Shockwave Technologies "Blade Pistol Stabilizer 2.0" Left Side**

Further, we noted the following markings on the submitted sample:

- **SHOCKWAVE TECHNOLOGIES**
- **BLADE PISTOL STABILIZER**
- **PATENT PENDING**
- **MADE IN U.S.A.**

We should note, that while you describe this item as a **Shockwave Technologies "Blade Pistol Stabilizer 2.0"**, such a model designation is not marked on the submitted item.



**Shockwave Technologies "Blade Pistol Stabilizer 2.0" Assembled to AR-Type Receiver**

FTISB maintains that "length of pull" is a measurement found on shoulder-fired weapons, generally measured from the center of the trigger to the center of the buttplate/buttstock. FTISB research has determined the average length of pull found on shoulder-fired weapons is approximately 13.5-14.5 inches. FTISB personnel found that when installed to an AR-type receiver, the maximum length of pull observed was approximately 13-3/16 inches.



**Shockwave Technologies "Blade Pistol Stabilizer" Assembled to AR-Type Receiver, With a Length of Pull of Approximately 13-3/16 Inches**

You should also be aware that the ATF has concluded that attaching the Shockwave Blade Pistol Stabilizer to an AR-type handgun alone as a forearm brace, does not "make" a NFA weapon.

However, if the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock - for example, configuring the brace so as to permanently affix it to the end of a buffer tube, (thereby creating a length that has no other purpose than to facilitate its use as a stock), removing the arm-strap, or otherwise undermining its ability to be used as a brace – and then in fact shoots the firearm from the shoulder using the accessory as a shoulder stock, that person has objectively "redesigned" the firearm for purposes of the NFA. This conclusion is not based upon the mere fact that the firearm was fired from the shoulder at some point.

As received, the Shockwave Technologies brand, "Blade Pistol Stabilizer 2.0" is a firearm accessory not regulated by the GCA or NFA. An AR-type pistol with the Blade Pistol Stabilizer attached, is not a "firearm" as defined in 26 U.S.C. § 5845(a). Please be aware, that a weapon which is designed or redesigned, made or remade, and intended to be fired from the shoulder, and designed or redesigned and made or remade to use the energy of an explosive to fire only a single projectile through a rifled bore for each single pull of the trigger is classified as a "rifle" as defined in the GCA, 18 U.S.C. § 921(a)(7).

Further, to answer your specific inquiry involving the Shockwave Technologies brand, "Blade Pistol Stabilizer", your "fundamental questions" below are in italics with our response:

**Question:** *Does the addition of the Blade 2.0 brace convert a firearm in a manner that would cause it to be classified as a "rifle" and thus a "firearm" regulated by the National Firearms Act?*

**Answer:** If the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock - for example, configuring the brace so as to permanently affix it to the end of a buffer tube, (thereby creating a length that has no other purpose than to facilitate its use as a stock), removing the arm-strap, or otherwise undermining its ability to be used as a brace – and then in fact shoots the firearm from the shoulder using the accessory as a shoulder stock, that person has objectively "redesigned" the firearm for purposes of the NFA. This conclusion is not based upon the mere fact that the firearm was fired from the shoulder at some point.

**Q:** *Is sporadic, or situational use of a firearm equipped with the Blade 2.0 pistol brace, from a firing position at or near the shoulder sufficient to constitute a "redesign" of the firearm?*

**A:** If this "Blade Pistol Stabilizer 2.0" is assembled to a pistol and if the shooter/possessor takes affirmative steps to configure the device for use as a shoulder-stock- thus designing or redesigning or making or remaking of a weapon designed to be fired from the shoulder, which incorporates a barrel length of less than 16 inches; this assembly would constitute the making of "a rifle having a barrel or barrels of less than 16 inches in length"; an NFA firearm as defined in 26 U.S.C. § 5845(a)(3).

For your information, FTISB personnel have determined a Shockwave Technologies Blade Pistol Stabilizer 2.0 as evaluated, is a firearm accessory designed to assist with the operation and use of pistols. Specifically, aiding the shooter in stabilizing the firearm when firing the host pistol. Our Branch has determined such an accessory assists in the supporting of handguns which are generally large and heavy, such as AR, AK, FAL, CZ BREN/Scorpion and HK91/93-type semiautomatic pistols.

FTISB research has found such a firearm accessory is not an accessory normally used in conjunction with revolvers, single-shot pistols and standard sized semiautomatic pistols such as 1911 or Glock-type handguns. Handguns such as Smith & Wesson J-frame revolvers and Kel-tec P3ATs, Ruger LCPs and Beretta Model 21A-type pistols are generally too small to necessitate the use of a Shockwave Technologies Blade Pistol Stabilizer 2.0.

We caution that this determination applies only to the **Shockwave Technologies Blade Pistol Stabilizer 2.0** as submitted. Any alterations or modifications to any of the evaluated item's design, dimensions or materials used in the manufacture of this item would make it subject to further review.

Please note that the focus of FTISB is to determine whether or not an item(s) is an item regulated by the GCA or NFA. FTISB determinations are dependent upon the particular facts, designs, characteristics or scenarios presented. Please be aware that although other cases (submissions to our Branch) may appear to present identical issues, correspondence from FTISB pertains to a particular issue or item.

We would caution from directly applying guidance wholly or in part, in correspondence from FTISB to other cases, because complex legal or technical issues may exist that differentiate this scenario or finding from others that only appear to be the same. Formal determinations by FTISB personnel are relevant to the item as submitted. An item's overall design, dimensions, configuration, method of operation, processes, utilized materials and intended use are variables considered in the evaluation of an item submitted to FTISB.

We thank you for your inquiry and trust the foregoing has been responsive to your request. Feel free to write to FTISB if you have any additional firearms-related inquiries of a technical nature.

Sincerely yours,

Michael R. Curtis
Chief, Firearms Technology Industry Services Branch