IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, | ) | |
| GUN OWNERS OF AMERICA, INC., | ) | |
| GUN OWNERS FOUNDATION, and | ) | |
| BRADY BROWN, | ) | |
| | ) | Case No. 6:23-cv-00013 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BUREAU OF ALCOHOL, TOBACCO, | ) | |
| FIREARMS AND EXPLOSIVES, UNITED | ) | |
| STATES DEPARTMENT OF JUSTICE, and | ) | |
| STEVEN M. DETTELBACH in his official | ) | |
| capacity as the Director of ATF, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' BRIEF ON *MOCK V. GARLAND***

As ordered by the Court, ECF 26, Plaintiffs submit this brief on the impact of the

district court's order in *Mock v. Garland*, No. 4:23-cv-00095-O, 2023 U.S. Dist. LEXIS

54776 (N.D. Tex. Mar. 30, 2023) ("*Mock* Order").  In short, the *Mock* Order should have

little effect on the Court's consideration of Plaintiffs' motion for a preliminary injunction.

Multiple of Plaintiffs' claims, along with several of their distinct arguments, were not

presented in *Mock*; the *Mock* Order therefore does not address them and has little utility

for resolving the distinct issues here.  In addition, the *Mock* Order failed to consider several

relevant features of statutory interpretation, constitutional law, and administrative law,

thereby diminishing if not eliminating its usefulness in assisting the Court even on those

of Plaintiffs' causes of action that do overlap.

## I.   The *Mock* Order Did Not Address Multiple Claims and Various Arguments Plaintiffs Present Here.

Plaintiffs have presented seven distinct reasons why the Final Rule is unlawful and should be preliminarily enjoined.  *See generally* ECF 16.  The *Mock* Order addresses only three of these: that the Final Rule (1) exceeds ATF's statutory authority; (2) violates the Second Amendment; and (7) is not a logical outgrowth of the Proposed Rule.  *Mock* Order at 7–8, 13–15, 8–10.  The *Mock* Court did not address Plaintiffs' third through sixth grounds: that the Final Rule (3) unconstitutionally taxes the exercise of a constitutional right; (4) violates the Fifth Amendment guarantee against self-incrimination;[1] (5) is not an exercise of the taxing power, the only constitutional power that could even arguably support the Final Rule; and (6) is arbitrary and capricious.  In other words, the *Mock* Order analyzes only a minority of claims that Plaintiffs raise.  But even then, and as explained below, on the three similar claims that were addressed, the *Mock* court was not presented with several of the key arguments Plaintiffs raise here.

## II.   The *Mock* Order Did Not Consider Plaintiffs' Arguments Regarding the Statutory Definition and the Rule of Lenity.

To meet the statutory definition of a "rifle," a weapon must be *designed* and *intended* to be fired from the shoulder.  ECF 16 at 15–16 (citing 26 U.S.C. § 5845(c)).  The Final Rule exceeds ATF's statutory authority by defining a "rifle" more expansively than does the statute, including in its definition "a weapon that is equipped with an accessory, component, or other rearward attachment (e.g., a 'stabilizing brace') that provides surface

---

[1]  The Fifth Amendment claims are brought only by Brown, GOA, and GOF.

area that *allows* the weapon to be fired from the shoulder." 88 Fed. Reg. at 6574 (amending 27 C.F.R. § 478.11); 6575 (amending 27 C.F.R. § 479.11) (emphasis added). *Allows*, it should not need to be said, is not *designed and intended to be.*

Neither of the *Mock* Order's two reasons for disregarding a similar statutory argument is persuasive. First, the court was incorrect to conclude that "it is not substantially likely that the Final Rule exceeds the agency's scope of authority" merely because "other courts have recognized ATF's authority to interpret the statute it has been charged with administering." *Mock* Order at 8. Agency rules, including ATF's, are frequently enjoined notwithstanding that the agency has authority to interpret the relevant statute. *See*, *e.g.*, *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023). Authority to interpret is not enough—the agency must interpret the statute *correctly*, something the Final Rule does not do.[2] What is more, calling into question the correctness of the *Mock* Order's holding, the Fifth Circuit recently expressed its "concern … at the ATF's lack of explicit authorization to interpret criminal statutes as such," and "'deep discomfort at allowing an agency to define the very criminal rules it will enforce by implicit delegation' … especially in light of statements made by several members the Supreme Court calling into question the relevant standards for legislative-power-delegation issues." *Cargill* at 471 (citing *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 730 (6th Cir. 2013) (Sutton, J., concurring)).

---

[2] Where *Chevron* deference applies, the agency must interpret the statute "reasonably." However, ATF does not seek *Chevron* deference here, and *Cargill* concluded in any event that ATF gets no *Chevron* deference when it interprets the NFA (a criminal statute). 57 F.4th at 466. *See Mock* Order at 7-8.

3

Second, ATF's enumeration of characteristics it will consider is not "permissible" merely because the statutory words "designed" and "intended" may require ATF "to evaluate objective weapon characteristics." *Mock* Order at 8. Once again, the question is whether the Final Rule *properly interpreted* the statutory words. The *Mock* Order provides scant analysis on this front, finding only that "identify[ing] the criteria" by which the statute will be applied does not facially "rewrite the definition itself." *Id.* But Plaintiffs' point in this case is that the "characteristics" ATF *has* purported to "identify" serve to expand the statute beyond its text, regulating weapons that Congress did not regulate – namely, handguns equipped with stabilizing braces.

Indeed, Plaintiffs presented significant argument (not raised in *Mock*) as to why ATF's interpretation of the statute is wrong, including under the rule of lenity. ECF 16 at 11 (citing *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505 (1992)); *id.* at 3-4 (arguing that if a particular handgun has characteristics that theoretically could independently lead to a conclusion that it is an SBR, the least restrictive classification must apply). The *Mock* Order did not meaningfully address the rule of lenity—perhaps because the *Mock* plaintiffs did not cite to *Thompson* or make the argument Plaintiffs do here.[3] Not

---

[3] The *Mock* plaintiffs mentioned the rule of lenity only twice in their motion for preliminary injunction. *See Mock*, ECF 36 at 14–15 ("At all times, that authority [to administer, enforce, and exercise the functions and powers of the Attorney General with respect to the NFA and the GCA] is subject to constitutional restrictions as well as the ancient doctrine of the rule of lenity given the criminal penalties that accompany most violations of the NFA and GCA."); 35–36 ("And in the context of a statute imposing criminal liability, fundamental principles of statutory interpretation and the equally fundamental due process and separation of powers concerns driving the rule of lenity forbid the Agencies' efforts to broaden the reach of the definition of 'firearm' or 'rifle' while ignoring the definition of

presented with the argument that Plaintiffs make here, the *Mock* Order, at 11, casts doubt on whether the rule of lenity even "applies," finding the Final Rule to be interpretive in nature. That contradicts binding precedent, which confirms that the rule of lenity is a critical component of any review of ATF's statutory interpretation of the NFA. *See Cargill*, 57 F.4th at 471.

The *Mock* Order also seemingly placed a thumb on the scale not for Plaintiffs, as the rule of lenity requires, but *for ATF*. Specifically, the *Mock* court rejected a Fifth Amendment vagueness challenge by concluding that the definition of "rifle" in the Final Rule "is comprehensible enough to put a person of ordinary intelligence on notice that their weapon *may be* subject to federal firearms laws." *Mock* Order at 13 (emphasis added). But the rule of lenity requires much more: "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221–22 (1952). A statutory scheme that puts citizens on notice that their conduct "*may* be subject to federal firearms [criminal] laws" simultaneously puts citizens on notice that their conduct *may not* be. The rule of lenity requires that such statues be read *against*, not *for*, the possibility of criminality.

---

'handgun' and the common meaning of 'pistol or revolver' even if this Court were to conclude that the statutory definition of a 'firearm' or a 'rifle' were ambiguous enough to include a braced pistol. *Cargill*, 57 F.4th at 469–71.").

### III.   The *Mock* Order's Second Amendment Analysis Erred.

The *Mock* court's Second Amendment analysis is also flawed in several respects.

First, the *Mock* Order misapplied the relevant Second Amendment test and, indeed, its conclusion conflicts with the Second Amendment's text.   Underpinning the *Mock* court's Second Amendment analysis was its observation that "the Final Rule does not *ban* stabilizing braces;" it concluded that the challengers' Second Amendment argument failed for that "simple reason."   *Mock* Order at 13.   But as *Bruen* makes clear, *all* firearm regulations regulating persons, arms, or activities that "the Second Amendment's plain text covers" are subject to the same test as outright bans: the government must "justify [the] regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation."   142 S. Ct. 2111, 2129–30 (2022).   Indeed, even the New York statute at issue in *Bruen* was not a complete "ban" on concealed carry of firearms, as some New Yorkers applied and received permits to do just that under the state's restrictive "proper cause" regime.   The Second Amendment's text confirms this, prohibiting not only a total "ban" but also any law that even "infringe[s]" protected persons, arms, or activities.

Next, the *Mock* Order concluded that "[n]or does the Second Amendment bar the imposition of traditional registration and licensing requirements."   *Id*. at 14.   But the *Bruen* majority never made this claim, as Plaintiffs have already explained in their Reply.   *See* ECF 29 at 17.   But even so, the Final Rule goes a great deal further than "traditional registration and licensing," as citizens may not sell or transfer their SBRs (which the ATF

now considers a braced pistol to be), or take their SBRs across state lines,[4] "except as specifically authorized by the Attorney General consistent with public safety and necessity"— regardless of whether the SBR (or braced pistol) is registered.  18 U.S.C. § 922(a)(4), (b)(4).

Next, the *Mock* Order wrongly concluded that the Final Rule presents no Second Amendment problem because it "does not regulate stabilizing braces on their own but only [when] they are attached to a firearm."  *Mock* Order at 14.  But that just makes plain that the Final Rule is indeed about firearms, and not just about accessories.  And as Plaintiffs have argued, the Second Amendment broadly protects all manner of "arms" in addition to merely "firearms," irrespective of whether a particular part or accessory is currently attached to a firearm.  ECF 29 at 14-16.

In addition, the *Mock* Order's premise is wrong—the Final Rule *does* regulate stabilizing braces "on their own" in at least some circumstances.  For example, an owner of a firearm equipped with a brace who does not wish to register his firearm must permanently remove *and dispose* of the brace or *alter* it so it can never be attached to the firearm (which seems the equivalent of disposal, as it would destroy any utility as a firearm accessory).  FR 6570.  Thus, the Final Rule unequivocally attempts to extend the NFA to regulate braces even when not attached to a weapon, otherwise a person could simply remove the brace without altering or destroying it.  While the *Mock* Order appears to

---

[4] Plaintiffs are not aware, for example, of any state law requiring a person to obtain a permit to carry a concealed handgun, and then subsequently requiring the person to file a form and obtain preclearance each time she crosses a county line while carrying.

downplay constructive possession (*Mock* at *20, n.27), this is a real possibility for a person in possession of a brace and a pistol to which the brace *can* be (but *is* not) attached.[5]  In fact, ATF agrees, as it provides the following FAQ on its website:

Q:   Can I possess a pistol and unattached 'stabilizing brace'?

A:   An NFA firearm need not be assembled to be regulated as such.  Whether a person may be in constructive possession of an NFA firearm depends on the facts of a particular case."[6]

The *Mock* Order is thus entirely incorrect that a person "may still purchase [stabilizing braces] without being affected by the Final Rule."  *Id*. at 15.

Finally, the *Mock* Order improperly flipped the constitutional presumption with respect to Second Amendment challenges.  Although acknowledging that ATF had not, as required by *Bruen*, 142 S. Ct. at 2129–30, presented historical evidence justifying the Final Rule, the *Mock* court nevertheless concluded that any "lack of historical evidence" in the "condensed" preliminary injunction briefing cut *against the challengers*.  *Mock* Order at 15.  This is precisely the opposite of what *Bruen* requires, as the Court explained that the Second Amendment "presumptively protects" certain persons, arms, and activities.  *Id*. at 2129–30.  Quite to the opposite, the *Mock* court concluded that "the historical record may support such a result at the summary judgment stage."  *Id*. at 15.  Rather, in the absence of a historical record and with a "presumption" of constitutional protection, the Court should

---

[5] "Possession of a firearm can be shown through either constructive or actual possession." *United States v. Lott*, 310 F.3d 1231, 1247 (10th Cir. 2002).
[6] https://www.atf.gov/firearms/qa/can-i-possess-pistol-and-unattached-%E2%80%9Cstabilizing-brace%E2%80%9D.

8

have held the Final Rule invalid, while noting that the government may further attempt to support the Final Rule "at the summary judgment stage."   In fairness, the preliminary-injunction schedule in *Mock* may not have allowed much time or space to flesh out the historical record.   But that does not change that *Bruen* does not place the burden of justifying a challenge on a plaintiff, but rather on the government.   Nothing about the preliminary injunction posture of *Mock* changed that presumption.  *See Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 336–38 (5th Cir. 1981) (court must take into account ultimate burden of proof at trial when considering preliminary injunction). Moreover, unlike in *Mock*, Plaintiffs here have furnished the historical analysis ostensibly lacking in *Mock*, including numerous photographs showing a historical tradition of *not* regulating SBRs.   ECF 29 at 20; ECF 1 at ¶¶ 290–96.   And while ATF attempted to overcome its burden in this case, citing several historical statutes, Plaintiffs have already shown that "none create the sort of broad and enduring historical tradition required by *Bruen*."  ECF 29 at 28–32.

## IV.   **The *Mock* Court's Logical-Outgrowth Analysis Was Mistaken.**

The Final Rule "sets forth binding requirements for a party to obtain a permit or license" and is therefore a "*legislative* rule" requiring notice-and-comment rulemaking. *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251–52 (D.C. Cir. 2014).  The *Mock* Order erred to the extent that it believed the Final Rule likely was interpretive in nature.  *See Mock* Order at 9 (assuming for purposes of argument that the Final Rule is substantive, but noting that "its discussion above suggests otherwise").  Indeed, that ATF conducted notice-and-comment rulemaking is a good indication that notice and comment was required.  The

9

content of the Final Rule demonstrates that it is in core "legislative rule" territory, *McCarthy*, 758 F.3d at 251–52, as it sets forth binding requirements regarding whether a brace and pistol combination will be considered an SBR and mandates that persons owning weapons that meet these binding requirements obtain the functional equivalent of a license on pain of criminal penalty. "[I]nterpretive rules," by contrast, "do[] not … purport to impose new obligations or prohibitions or requirements on regulated parties." *Id*. at 252. That cannot describe the Final Rule, which undisputedly *does* impose new obligations on brace owners whom ATF previously represented were outside the NFA's reach. ECF 16 at 1–2; ECF 29 at 6.

Moreover, even when assuming the Final Rule to be substantive, the *Mock* Order's application of the "logical outgrowth" test was flawed. First, the court concluded that, even though the Final Rule ultimately "abandoned Worksheet 4999" and "abandoned the point system" for analyzing firearms, it was enough that the Final Rule used "six criteria … 'derived from the NPRM and proposed Worksheet 4999.'" *Mock* Order at 10. But it is not entirely true that the Final Rule's criteria were "derived from" the NPRM. To be sure, Worksheet 4999 contained various *specific* numerical "weight," "length," and "length of pull" criteria, and examined "surface area" and various "sights or a scope," all factors that are incorporated generally (but without any numerical boundaries) into the Final Rule. *Cf.* Final Rule at 6574 with NPRM at 30835. But when it comes to the Final Rule's consideration of "marketing and promotional materials" (factor 5) that clearly was not "derived from" the NPRM and, in fact, directly conflicts with the NPRM's statement "the marketing of items commonly known as 'stabilizing braces' [] *does not affect* any ATF

10

determinations…." *Id.* (emphasis added).  Second, according to the *Mock* court, "that ATF was considering a rule 'to aid the firearms industry and public in understanding the criteria that [the agency] considers'" was "enough to put the affected public on notice of the subjects and issues the Final Rule would address…." *Id.*  But the Eighth Circuit has held quite differently, "reject[ing] the … suggestion that any notice of the subjects and issues involved is sufficient notice." *Citizens Telecomms. Co. of Minn., LLC v. FCC*, 901 F.3d 991 (8th Cir. 2018).

## CONCLUSION

The *Mock* Order does not address all of the claims this Court must address in deciding whether to grant preliminary injunctive relief here.  On the issues it does address, the *Mock* Order does not address each of the distinct arguments the Plaintiffs present here, and commits a few key errors on the issues that are addressed.  In short, the *Mock* Order is not persuasive as applied here, and should not present an impediment to this Court preliminarily enjoining ATF from enforcing the Final Rule.

Dated April 14, 2023.

/s/ Stephen D. Stamboulieh
STEPHEN D. STAMBOULIEH
Mississippi Bar No. 102784
Southern District of Texas No. 3554925
Stamboulieh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

ANTHONY R. NAPOLITANO
Arizona Bar No. 034586
Southern District of Texas No. 3837680
Bergin, Frakes, Smalley & Oberholtzer,
PLLC
4343 E. Camelback Road, Suite 210
Phoenix, Arizona 85018
(602) 848-5449
anapolitano@bfsolaw.com

GILBERT J. AMBLER
Virginia Bar No. 94325
Southern District of Texas No. 3834055
20 S. Braddock St
Winchester, VA 22601
(540) 550-4236
gilbert@amberlawoffices.com

*Counsel for Plaintiffs Brady Brown, Gun
Owners of America, Inc., and Gun
Owners Foundation*

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

AARON F. REITZ
Deputy Attorney General for Legal
Strategy
Texas Bar No. 24105704
Southern District of Texas No. 3653771

LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas No. 33695

/s/ Charles K. Eldred
CHARLES K. ELDRED
Special Counsel for Legal Strategy
Texas Bar No. 00793681
Southern District of Texas No. 20772

CHRISTINA CELLA
Assistant Attorney General
Texas Bar No. 24106199
Southern District of Texas No. 3355870

OFFICE OF THE ATTORNEY
GENERAL OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 936-1700
Aaron.Reitz@oag.texas.gov
Leif.Olson@oag.texas.gov
Charles.Eldred@oag.texas.gov
Christina.Cella@oag.texas.gov

*Counsel for Plaintiff State of Texas*

12

## CERTIFICATE OF SERVICE

I certify that on April 14, 2023, I filed this motion through the Court's CM/ECF system, which automatically served it upon all counsel of record.

/s/ Charles K. Eldred