IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 6:23-cv-00013 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, | |
| *Defendants.* | |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY RELIEF**

**INTRODUCTION AND SUMMARY**

In *Mock v. Garland*, Judge O'Connor denied the plaintiffs' motion for preliminary injunction, holding that plaintiffs had failed to show a likelihood of success on the merits of any of their challenges to ATF's final rule, *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("the Rule"). *Mock v. Garland*, ---F. Supp. 3d---, 2023 WL 2711630, at *1 (N.D. Tex. Mar. 30, 2023), *appeal filed*, No. 23-10319 (5th Cir. Mar. 31, 2023).[1] This Court has ordered the parties to brief the import of Judge O'Connor's decision on the claims here. *See* Order, ECF No. 26.

As in this case, the *Mock* plaintiffs—two individual Texas residents, a manufacturer/retailer that specializes in stabilizing braces and braced pistols, and a nonprofit organization—sought to preliminarily enjoin the Rule, contending as relevant here, that: (1) the Rule exceeds ATF's statutory authority; (2) the Rule is not a logical outgrowth of ATF's proposed rule in violation of the APA; (3) the Rule is vague in violation of the Fifth Amendment, and (4) the Rule violates the Second Amendment.. The court rejected plaintiffs' motion for failure to demonstrate a substantial likelihood of success as to any of these claims. *Mock*, 2023 WL 2711630, at *8. This Court should do the same.

**DISCUSSION**

### I. Statutory Authority

Both here and in *Mock*, plaintiffs contend that ATF exceeded its statutory authority in publishing the Rule. *Compare* Pls.' Mot. for Prelim. Inj., at 9, ECF No. 16 ("Mot.") ("[I]t is not enough that a weapon is constructed in a way that merely *allows* a shooter to fire from the shoulder. It must be *designed* and *intended* to be fired from the shoulder.") *with* Mot. for Prelim. Inj., at 28, *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex. Feb. 21, 2023), ECF No. 36 ("*Mock* PI Mot.") ("The NFA and GCA do not allow for the regulation of a firearm that *can* or *may be* fired from the shoulder, . . . *unless* that firearm was designed and intended to be fired from the shoulder."). In substance, both sets of plaintiffs assert

---

[1] *See also* Op. & Order, *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex. Mar. 30, 2023), ECF No. 40.

1

that the Rule rewrites the statute by "eliminat[ing] 'designed and intended' from the definition" of rifle. Mot. at 10; *Mock* PI Mot. at 28.

The court in *Mock* properly concluded that plaintiffs had failed to show a likelihood of success on their statutory authority claim, concluding both that ATF had likely acted within its statutory authority and that the Rule likely does not conflict with the relevant statutory definitions. *Mock*, 2023 WL 2711630, at *4. Judge O'Connor explained that "[t]he statutory definition of 'rifle' uses terms such as 'designed,' 'redesigned,' 'remade,' and 'intended,' words that necessarily require the enforcing agency—or anyone who would comprehend the statute's meaning—to evaluate objective weapon characteristics, and perhaps conduct, to decide whether a particular firearm is subject to the NFA." *Id.* The court reasoned that "[r]ules explaining when a brace or stabilizer actually redesigns a firearm or remakes a firearm sufficiently to a short-barreled rifle are therefore permissible," and that the Rule is one such rule, as it merely "identif[ies] the criteria by which enforcers, in their application of the statute, will make that determination." *Id.* Thus, the court found that the Rule "*does not . . . rewrite* the [statutory] definition itself" or "so clearly contradict[] the statutory definition of 'rifle' that preliminary injunctive relief is in order." *Id.* (emphasis added).

Plaintiffs' statutory arguments largely track those advanced in *Mock*, and so the court's rationale applies neatly here. The *Mock* decision reinforces that the Rule merely "identif[ies] the criteria by which enforcers, in their application of the statute" will determine whether a brace remakes a firearm into a short-barreled rifle, *id.*, and that this approach is in line with, and not contrary to, the statutory definition of rifle. Counter to both sets of plaintiffs' contentions, ATF has not rewritten the statute to eliminate the designed, made, and intended requirement in a manner that contradicts the statute, but instead, sets forth which weapon characteristics or conduct ATF will look to in furtherance of the statutory inquiry.

2

In addition, plaintiffs in both actions have advanced arguments regarding the rule of lenity. *See* Pls.' Reply in Support of Mot. for Prelim. Inj., at 5, ECF No. 29 ("Reply") (contending that "[a] braced handgun . . . cannot have two different classifications under federal law" and thus "the rule of lenity compels the one that favors the gun owner"); *but see id.* ("ATF does not and cannot argue that the statutes it claims to 'interpret' are ambiguous.")[2]; *Mock* PI Mot. at 24–25 (arguing that "the rule of lenity forbid[s] the Agencies' efforts to broaden the reach of the definition of 'firearm' or 'rifle' while ignoring the definition of 'handgun' and the common meaning of 'pistol or revolver,'" even in the event the court "were to conclude that the statutory definition of a 'firearm' or a 'rifle' were ambiguous")(citing *Cargill v. Garland*, 57 F.4th 447, 469–71 (5th Cir. 2023) (en banc), *petition for cert. filed*, No. 22-976 (U.S. Apr. 7, 2023)).

But again, Judge O'Connor rejected the *Mock* plaintiffs' contentions. The court specified that because the Rule does not rewrite the underlying statutes, and instead, simply identifies criteria by which enforcers apply the statute, "Plaintiffs' argument regarding the rule of lenity, which requires the Court to interpret an ambiguous statute in favor of a criminal defendant, (assuming it applies) is unpersuasive." *Mock*, 2023 WL 2711630, at *6. Although the court did not elaborate further, its rejection of the plaintiffs' proposed application of lenity follows from the obvious conclusion that neither the relevant statutes nor the Rule is grievously ambiguous—a conclusion that is further bolstered by the court's determination that plaintiffs had not demonstrated a likelihood of success on their vagueness claims. *See id.* at *7 (determining the Rule is "comprehensible" to a person of ordinary intelligence). As *Mock* suggests, nothing in the regulatory framework at issue here is grievously ambiguous, and lenity does not help Plaintiffs.

---

[2] *See also* Defs.' Opp. to Pls.' Mot. for Prelim. Inj., at 33, *Mock v. Garland*, No. 4:23-cv-95 (N.D. Tex. Mar. 10, 2023), ECF No. 37 ("*Mock* Opp.") (explaining lenity "applies only where, 'after considering text, structure, history, and purpose, there remains a *grievous ambiguity* or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.'" (quoting *Maraich v. Spears*, 570 U.S. 48, 76 (2013) (emphasis added)).

## II. Logical Outgrowth

The *Mock* plaintiffs, like Plaintiffs here, also asserted that the final rule was not a logical outgrowth of the proposed rule, in violation of the APA. Both sets of plaintiffs contend that while ATF's Notice of Proposed Rulemaking ("NPRM") included Worksheet 4999—which would have allocated points to firearms with certain objective criteria in determining whether a firearm is a short-barreled rifle—the Final Rule did not adopt Worksheet 4999 and its point system, and instead, utilized a multi-factor balancing test. *See* Mot. at 20–22; *Mock* PI Mot. at 30.

The *Mock* court held that plaintiffs were unlikely to prevail on their logical outgrowth challenge. *Mock*, 2023 WL 2711630, at *5. The court first strongly suggested that the Rule is interpretive, and therefore, not subject to notice-and-comment requirements like the logical outgrowth test. *See id.* In any event, the court "assum[ed] . . . for the sake of argument that the Final Rule is substantive," and still held that the Rule "likely satisfies the logical outgrowth requirement." *Id.* The court found that because the proposed rule expressed that "ATF was considering a rule 'to aid the firearms industry and public in understanding the criteria that [it] considers when evaluating' the classification of firearms under the NFA and [GCA]," and the Rule's six criteria to be used for classifying firearms were derived from the NPRM and proposed Worksheet 4999, ATF's NPRM had adequately "put the affected public on notice of the subjects and issues the Final Rule would address, and indeed, the very criteria the agency would employ in classifying firearms." *Id.* (quoting *Factoring Criteria for Firearms with Attached "Stabilizing Braces,"* 86 Fed. Reg. 30,826, 30,828 (June 10, 2021)). Thus, it held the *Mock* plaintiffs had not demonstrated a likelihood of success on this claim.

The *Mock* decision underscores why the Rule poses no logical outgrowth problem, contrary to Plaintiffs' contentions here. *See also* Defs.' Opp. to Pls.' Mot. for Prelim. Inj., at 25–28, ECF No. 22 ("Opp.") (asserting the Rule is interpretive and not subject to notice-and-comment requirements, or alternatively, the Rule is a logical outgrowth of the NPRM). First, the decision rebuts Plaintiffs'

4

argument that "[i]t is *impossible* to characterize the Final Rule as merely interpretive" and that Defendants' assertion to the contrary "is, simply, wrong." Reply at 12 (emphasis added). On the contrary, *Mock* stands for the proposition that it is not only reasonable to deem the Rule interpretive, but also likely correct.

Moreover, the *Mock* decision demonstrates that the Rule's adoption of a multi-factor balancing test, instead of Worksheet 4999's weighted approach, reflects responsive and well-considered rulemaking, and did not "fundamentally alter[] the nature of the test the NPRM propose[d]," as Plaintiffs insist. Reply at 13. In fact, the *Mock* court highlighted how the Rule's criteria were derived from the NPRM and Worksheet, and thus, how the NPRM adequately notified the public of the subjects and issues the Rule would address. *Mock*, 2023 WL 2711630, at *5 ("'[T]he Final Rule's six criteria to be used for classifying firearms were 'derived from the NPRM and proposed Worksheet 4999.'" (quoting 88 Fed. Reg. at 6,480)). Therefore, the *Mock* decision provides further support that ATF's rulemaking process was appropriate under the APA.

### III. Vagueness

Both sets of plaintiffs likewise challenge the Rule's alleged failure to "give adequate notice of what will or will not be considered a[] [short-barreled rifle]." Mot. at 15–16. The *Mock* plaintiffs set forth a full-throated argument contending that the Rule is void-for-vagueness in violation of the Fifth Amendment. *See Mock* PI Mot. at 19–22. In particular, the *Mock* plaintiffs challenged the Rule's multi-factor test as vague, criticizing a number of its individual objective factors as impermissibly vague as well as how the factors "are subjectively balanced." *Id.* at 20–21; *id.* at 20 ("Which [factor] is more important? Do they cancel each other out?").

Plaintiffs here only briefly challenge the Rule as vague in the Fifth Amendment context, but similarly assert that the Rule "fails to give fair notice of conduct that is required to comply with [it]," and "gives no indication of how [the factors] will be counted or the relative values assigned to any

5

particular feature or characteristic." Mot. at 15–16; *see also* Reply at 10. Plaintiffs instead make the bulk of their vagueness critiques in the context of their APA claim, but still track the arguments in *Mock*. *See* Mot. at 19 (arguing that factors are "incomprehensible" and the Rule gives "no indication of how the factors described therein will be counted or the relative values assigned to any particular feature or characteristic"); Reply at 8 (contending that the Rule lacks "any fixed measurements or other clear guidance").

Judge O'Connor's analysis should apply here and dispense with Plaintiffs' similar vagueness arguments. The court determined that although the factoring criteria may be "imprecise, they *do* provide a standard—one that tracks the statutory definition regarding whether a weapon is 'designed or redesigned, made or remade, and intended to be fired from the shoulder.'" *Mock*, 2023 WL 271160, at *7. Thus, the court held the Rule's factoring criteria approach "is comprehensible enough to put a person of ordinary intelligence on notice that their weapon may be subject to federal firearms laws," and therefore, plaintiffs had not shown a substantial likelihood of success on their Fifth Amendment claim. *Id.*

Here, Plaintiffs fall far short of establishing that the Rule is void-for-vagueness under the Fifth Amendment: simply put, the Rule is comprehensible enough to put an ordinary person on notice of its requirements. Moreover, the court's conclusion that the Rule tracks the statutory inquiry and provides a comprehensible standard undercuts Plaintiffs' suggestion that the Rule is "incomprehensible" and therefore arbitrary, and likewise, supports that the Rule's approach is "reasonable and reasonably explained," which is all the APA requires under arbitrary and capricious review. Opp. at 19 (quoting *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021)); *see generally* Opp. at 19–23.

6

### IV. Second Amendment

Lastly, the *Mock* plaintiffs brought two Second Amendment claims asserting that: (1) the Rule is unlawful because brace-equipped weapons and braces themselves are firearms presently in common use that are subject to the Second Amendment's protection and thus "cannot be banned" pursuant to *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); and (2) even if the Rule is upheld, then ATF's regulation of brace-equipped weapons under the NFA violates the Second Amendment because there is no historical practice of regulating gunsmithing, and alternatively, such weapons are commonly owned and possessed and are therefore subject to heightened constitutional protection pursuant to *Heller* and *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). *Mock* PI Mot. at 12–15. Plaintiffs have brought similar claims here, asserting that the Second Amendment protects stabilizing braces as weapons in common use, citing *Heller*, and that ATF cannot show that the regulation is consistent with the Nation's historical tradition of regulating firearms. *See* Mot. at 12–13.

*Mock* opined that "Plaintiffs' first argument fails for the simple reason that the Final Rule does not ban stabilizing braces, nor firearms equipped with them," but instead, "require[s] regulated individuals and entities to comply with the NFA[]," explaining that "banning and regulating a firearm are not always one and the same." *Mock*, 2023 WL 2711630, at *7. And, notably, citing Justice Kavanaugh's concurrence in *Bruen*[3], Judge O'Connor highlighted that the Second Amendment does not "bar the imposition of traditional registration and licensing requirements commonly associated with firearm ownership." *Id.* With respect to the *Mock* plaintiffs' second argument, the court determined that since both versions of the argument "rel[ied] on a purported lack of historical evidence of similar government regulations," and "[g]iven the necessarily condensed briefing," the court could not "conclude that [the] Final Rule is substantially likely to violate Plaintiffs' Second Amendment rights." *Id.* at *8.

---

[3] Chief Justice Roberts also joined Justice Kavanaugh's concurrence. *See Bruen*, 142 S. Ct. at 2161.

As in *Mock*, a preliminary injunction should not issue here. Perhaps most significantly, the court's citation to and reliance on Justice Kavanaugh's concurrence in *Bruen*, and its acknowledgement that the Second Amendment permits traditional registration and licensing requirements, reflects that the regulatory scheme at issue here is likely a permissible registration requirement. At a minimum, the court's discussion on this point undermines Plaintiffs' contention that Justice Kavanaugh's concurrence "by definition, was *not* the majority's holding and says nothing about the legality of the type of scheme ATF has imposed here." Reply at 17. No one contends that Justice Kavanaugh wrote for the majority; rather, both his and Judge O'Connor's opinions bear on the issues here and support Defendants' contention that the Rule, which comes nowhere close to banning stabilizing braces (no matter how common their use), is valid under the Second Amendment.

As to historical analysis under *Bruen*, Defendants have presented the same arguments in this case as in *Mock*, and Plaintiffs have presented no more meaningful historical analysis than the *Mock* plaintiffs. *Compare* Opp. at 34–37 *with Mock* Opp. at 27–31. Thus, for this reason, and for all the reasons set forth in Defendants' Opposition brief, there is no reason for the Court to find a basis to enjoin the Rule on a Second Amendment theory, where Judge O'Connor did not.

## CONCLUSION

In sum, as in *Mock*, this Court should not preliminarily enjoin the Rule.

Dated: April 14, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　　　　　　ALAMDAR S. HAMDANI
　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　BRIGHAM J. BOWEN
　　　　　　　　　　　　　　　　　　　　Assistant Branch Director

*/s/ Taylor Pitz*
TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
JODY D. LOWENSTEIN (MT Bar No. 55816869)
MICHAEL DREZNER (VA Bar No. 83836)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 305-5200
Email: taylor.n.pitz@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF WORD COUNT**

I certify that the foregoing is 2,532 words, excluding the portions excepted by Local Rule 16(c).

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice

**CERTIFICATE OF SERVICE**

On April 14, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Taylor Pitz
TAYLOR PITZ
Trial Attorney
U.S. Department of Justice