IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, <br> GUN OWNERS OF AMERICA, INC., <br> GUN OWNERS FOUNDATION, and <br> BRADY BROWN, <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, <br> FIREARMS AND EXPLOSIVES, UNITED <br> STATES DEPARTMENT OF JUSTICE, and <br> STEVEN M. DETTELBACH in his official <br> capacity as the Director of ATF, <br><br> Defendants. | Case No. 6:23-cv-00013 |

**PRIVATE PLAINTIFFS' RESPONSE TO THE COURT'S QUESTIONS**

At its May 25, 2023 status conference with the parties, the Court asked the parties to address various issues, including with respect the scope of any potential injunctive relief, and additional matters as the parties thought appropriate. We write on behalf of the private plaintiffs Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation (together, "Plaintiffs"), to address the questions posed to them.

**1. Scope of Relief.** First, this Court inquired as to the appropriate scope of any potential injunctive relief. Plaintiffs have asked this Court for a nationwide injunction and, for the reasons below, continue to believe that is the proper form of relief in a case such as this. Barring that, however, Plaintiffs submit that any injunction should apply, at a minimum, to the members of the organizational plaintiffs and those with whom they cohabitate, along with their heirs and assigns.

1

**a. Relief Should Be Nationwide.**  Plaintiffs requested a nationwide injunction in their pleadings.  *See* ECF 14-2 at 25.  Plaintiffs continue to believe that nationwide relief is appropriate here, for a number of reasons.  Numerous courts within this Circuit, including the Fifth Circuit itself, have issued or upheld injunctions (including nationwide injunctions) based on representational standing.  *See, e.g.*, *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 369 (5th Cir. 2023) (en banc) (affirming the Southern District of Texas's nationwide injunction, and summarizing that "[t]he Supreme Court has recently stayed nationwide injunctions. … But the Court has yet to tell us they're verboten. … the lead plaintiff in this case has over 6,000 members spread across every State in the Nation … 'limiting the relief to only those before it would prove unwieldy and would only cause more confusion.'"); *see also Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) (granting a "nationwide injunction" on the theory that "CMDA's membership extends across the country" and "the Rule's harm is felt by healthcare providers and states across the country, including all of CMDA's members"); *Nat'l Fed'n of Indep. Bus. v. Perez*, 2016 U.S. Dist. LEXIS 89694, at *128-29 (N.D. Tex. June 27, 2016) (likewise issuing a nationwide injunction because "Plaintiff NFIB has shown that it is a nationwide organization which has members in all 50 states," who "would be subject to DOL's New Rule in every jurisdiction" and because "[w]here a party brings a facial challenge alleging that agency action violated APA procedures, a nationwide injunction is appropriate.").

The matter before the Court is similar to the case above where this Court granted nationwide injunctive relief and was affirmed by the Fifth Circuit, when the organization had over "6,000 members spready across every State in the Nation..."  The dissent in *Feds for Med. Freedom* opined that "tailored injunctive relief" was workable, on the theory that the "district court could direct [the organization] to submit the names of its members to the Government and employing

2

agencies in order to provide them relief." *Id.*, 63 F.4th at 394 (Haynes, J., dissenting). In contrast, Plaintiffs GOA and GOF have "more than 2 million members and supporters across the country, including tens of thousands within Texas, many of whom reside within this district." Compl. at ¶5, Compl. Ex. "1" at ¶6. Beyond the scale of implementation, such an injunction, where the organizational Plaintiffs were required to disclosed lists of affected individuals in order for them to be protected, would involve the same thorny issues as in *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958), requiring Plaintiffs to hand over the proverbial keys to the castle, giving the ATF and other government malefactors information that in no way would be shielded from the slight protection offered by 26 U.S.C. § 5848 (protecting only information submitted "by a natural person in order to comply" against use for prosecution purposes). At least one federal district court has explained that this definitively is *not required* for an organization to litigate on behalf of its members. *See Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, at *12-14 (N.D. Ill. June 9, 2021) (considering a motion for preliminary injunction, and finding that "[o]nly one qualifying member is needed to satisfy [representational standing], and he need not be named," that descriptions of and declarations from various members "suggest[s] that ISRA has a number of members through which it can claim standing," and "it will not be necessary to establish individualized facts for every affected member of the organizational plaintiffs").

Rather, Plaintiffs suggest that the best course of action is to enter a nationwide injunction pending resolution on the merits, placing everyone on notice that the Rule is likely defective. This makes further sense because, "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Fed'n of Indep. Bus.* at *128-29 (quoting *Harmon v.*

*Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)). *See also* 5 U.S.C. §706(2) ("The reviewing court shall – hold unlawful and set aside agency action...").[1]

### b. Alternatively, Relief Should Cover the Organizations' Members and Supporters.

As this Court is aware, on Friday, May 26, 2023, the Fifth Circuit granted the plaintiffs' motion for clarification in *Mock v. Garland*, answering in the affirmative various questions posed by those plaintiffs regarding the scope of relief of the Court's injunction. First, the Court explained that the phrase "the Plaintiffs in this case" includes the customers of the corporate plaintiff and the members of the organizational plaintiff in *Mock*. *Id*. at 2. These persons, the Court explained, are those "whose interests Plaintiffs … have represented since day one of this litigation…." *Id*. Second, the Court clarified that its injunction "includes the individual plaintiffs' resident family members." *Id*.

The same reasoning applies here. Plaintiffs GOA and GOF's involvement in this case is and has been, from the start, in a representative capacity only, on behalf of individual gun owners – advocating the interests and legal claims of those individuals.[2] That is evident both from the allegations in the complaint and the scope of relief sought from this Court. Compl. at ¶5, Compl. Ex. "1" at ¶6; *see also* ECF 14-2, p. 25. By that same token, GOA and GOF are *not* proceeding in

---

[1] *See also Texas v. Becerra*, 2023 U.S. Dist. LEXIS 56119, at *87 (N.D. Tex. Mar. 31, 2023) (listing various cases where the Fifth Circuit and Supreme Court have vacated agency rules without limitation to plaintiffs only, but finding "[r]ather, the Rule shall be universally set aside.").

[2] *See Save Our Cmty. v. EPA*, 971 F.2d 1155, 1160 (5th Cir. 1992) (finding representational standing based on an organization's allegation of "its raison d'etre as 'promoting the protection of the wetlands in and around [its members] communities' [and] 'the assertion that its members resided in the vicinity of or owned property near the wetlands … and enjoyed 'the wildlife, aesthetics, open space, ecological and other values of the wetlands, and [were] directly and beneficially interested in the continued protection, preservation, and enhancement of these values.'").

their capacity as organizations, as they have not alleged any harm flowing from the Final Rule directly to the organizations themselves.[3]

Not only is this form of relief seemingly approved by the Fifth Circuit's clarification in *Mock*, but also representational standing is clearly established both by the Supreme Court and by courts within this Circuit. In *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), the Supreme Court "recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *See also Save Our Cmty. v. EPA*, 971 F.2d 1155, 1160 (5th Cir. 1992); *Tex. Cable & Telcomms. Ass'n v. Hudson*, 265 F. App'x 210, 215 (5th Cir. 2008); *Veasey v. Perry*, 29 F. Supp. 3d 896, 904 (S.D. Tex. 2014) (noting that "representational standing" is also at times called "associational standing").

Here, GOA and GOF challenge the Final Rule's validity on statutory and constitutional grounds. Any individual member harmed by the Final Rule would have standing to sue for the vindication of their statutory or constitutional rights; indeed, Plaintiff Brady Brown, a member of

---

[3] The doctrine of representational standing is separate and distinct from an organization's standing based on it having suffered its *own* harm; "[t]here is no question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." *Warth v. Seldin*, 422 U.S. 490, 511 (1975). However, Plaintiffs GOA and GOF have not alleged organizational standing for claims brought on their own behalf. Indeed, because GOA and GOF have standing only as representatives of their members and supporters, an injunction granted as to the *organizations* themselves, but *not* to those they represent, would violate principles of redressability, as such relief was neither requested nor would right any legal wrong. *See Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) ("[T]here must be redressability—a likelihood that the requested relief will redress the alleged injury."). An injunction cannot redress harm to GOA and GOF as organizations, as none has been alleged that flows directly to the organizations themselves.

GOA, is suing in his individual capacity. *See* Compl. ¶ 4. Moreover, the interests GOA and GOF seek to protect in this lawsuit – namely, Second Amendment rights, among other constitutional rights – are germane to their organizational purposes, those being Second Amendment protection and advocacy. *See id.* ¶¶ 5–6. As alleged, GOA and GOF routinely litigate cases such as this across the country on behalf of the rights of gun owners. *Id*. at ¶10. Finally, this suit does not require the individual participation of each and every GOA and GOF member and supporter to challenge an arbitrary, capricious, and unconstitutional Final Rule. Plaintiffs do not seek individualized damages, but rather declaratory and injunctive relief.

As the Supreme Court explains, "'individual participation' is not normally necessary when an association seeks … *injunctive relief* for its members." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996) (emphasis added). To deny relief to the individuals represented by GOA and GOF would violate this tenet and, in effect, require individual participation by each of those persons. Such a result would, for all intents and purposes, reject the well-established principle of representational standing, if no relief based on such standing could be obtained. Not only that, denying representational relief would impose an unworkable strain on judicial economy (not to mention party resources), encouraging thousands (or tens of thousands) of similarly situated plaintiffs to flood the courts seeking purely de-individualized relief. This would require thousands of nearly-identical declarations from GOA and GOF's members and supporters, each attesting to indistinguishable facts and alleging identical irreparable harms.

On the contrary, collective action is the reason that people join these types of organizations, looking to "create an effective vehicle for vindicating interests that they share with others … The only practical judicial policy when people pool their capital, their interests, or their activities under a name and form that will identify collective interests, often is to permit the association or

corporation in a single case to vindicate the interests of all … The very forces that cause individuals to band together in an association will thus provide some guarantee that the association will work to promote their interests." *Int'l Union v. Brock*, 477 U.S. 274, 290 (1986).  *See also La Union Del Pueblo Entero v. FEMA*, 2017 U.S. Dist. LEXIS 146014, at *53-54 (S.D. Tex. Feb. 15, 2017) (same).

For the reasons stated in Plaintiffs' pleadings, this Court should grant Plaintiffs' motion and enjoin the Final Rule.  That injunction, should one be granted with a less-than nationwide scope, should include the individuals represented by GOA and GOF.  It also should include their domiciliary cohabitants (such as family members), who may reside with and have access to the firearms owned by a person protected by any injunction.  The Fifth Circuit panel's May 26, 2023 clarification of injunction in *Mock v. Garland*, No. 23-10319, is instructive.  Simply put, limiting the injunction to only cover those represented by GOA or GOF would leave unprotected household residents vulnerable to prosecution, creating an untenable paradox for cohabitants – a Schrödinger's short-barreled rifle – whereby the same firearm is a legally possessed braced pistol by a GOA member, *until* its owner leaves home to run an errand, whereupon the firearm suddenly becomes an illegal short-barreled rifle possessed by his wife or other family members.  That would be an absurd result.  Likewise, such an injunction should protect the heirs and assigns of such persons so that, in the event of their death, their lawfully owned firearms would not suddenly become illegal contraband possessed by their families.

**2. Additional Matters.**

At the May 25, 2023 status conference, the Court referred to the $200 National Firearms Act tax that accompanies registration of a short-barreled rifle as being subject to the Final Rule's grace period.  For purposes of clarification, Plaintiffs stress that the irreparable harm at issue is not

7

payment of the $200 tax stamp that accompanies registration of short barrel rifles. Rather, Plaintiffs' members and supporters who have not registered their braced pistols by tomorrow, May 31, 2023, will become felons on June 1, 2023. This is a "a feature, not a bug," of the Final Rule's "enforcement discretion," promising not to prosecute alleged violations of the National Firearms Act that the Final Rule creates. Compl. at ¶324. Indeed, if someone attempted to come into compliance *after* the "enforcement discretion" ended, attempting to file a ($200 paid tax stamp) Form 1 on June 1, 2023, such application would be denied, and ATF would undoubtedly prosecute that individual for being in possession of a short barrel rifle that is not registered in the NFRTR.

As Plaintiffs have alleged, if ATF believes that braced pistols should be swept into the scope of the NFA, that is something Congress must do, because "Congress alone has the institutional competence, democratic legitimacy, and (most importantly) constitutional authority to revise statutes in light of new social problems and preferences. Until it exercises that power, the people may rely on the original meaning of the written law." *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018).

**3. Conclusion.** The Court should enjoin the Final Rule in its entirety, nationwide, pending a resolution on the merits. Alternatively, this Court should enter an injunction that provides protection to those whose interests are represented by the organizational Plaintiffs.

                    Respectfully submitted,

Dated May 30, 2023

                    */s/ Stephen D. Stambouliegh*
                    STEPHEN D. STAMBOULIEH
                    Mississippi Bar No. 102784
                    Southern District of Texas No. 3554925
                    Stamboulieh Law, PLLC
                    P.O. Box 428
                    Olive Branch, MS 38654
                    (601) 852-3440
                    stephen@sdslaw.us

ANTHONY R. NAPOLITANO
Arizona Bar No. 034586
Southern District of Texas No. 3837680
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E. Camelback Road, Suite 210
Phoenix, Arizona 85018
(602) 848-5449
anapolitano@bfsolaw.com

GILBERT J. AMBLER
Virginia Bar No. 94325
Southern District of Texas No. 3834055
20 S. Braddock St
Winchester, VA 22601
(540) 550-4236
gilbert@amblerlawoffices.com

*Counsel for Plaintiffs Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation*

## CERTIFICATE OF SERVICE

I certify that on May 30, 2023, I filed the foregoing document through the Court's CM/ECF system, which automatically served it upon all counsel of record.

/s/ Stephen D. Stamboulieh