IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, <br><br> *Defendants*. | Civil Action No. 6:23-cv-00013 |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Pursuant to this Court's order, *see* Minute Entry (May 25, 2023), Defendants respectfully submit this supplemental brief to address several issues that the Court discussed with the parties at the status conference held on May 25, 2023.

*Parens patriae standing.* The State of Texas asks this Court to issue a preliminary injunction that protects all Texas residents (*i.e.*, tens of millions of non-parties) by invoking a *parens patriae* theory of standing. *See, e.g.*, Pls.' Mot. for Prelim. Inj. ("Mot.") at 23, ECF No. 16. But that would be misguided: Texas cannot proceed as *parens patriae* against the federal government to protect its residents from the operation of federal statutes or agency actions.

As the Supreme Court explained in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), states may litigate on behalf of their citizens as *parens patriae* in certain circumstances, including to protect "quasi-sovereign interest[s] in the health and well-being—both physical and economic—of [their] residents in general." *Id.* at 607. But a "State does not have standing as *parens patriae* to bring an action against the Federal Government" to protect those interests. *Id.* at 610 n.16 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923)). That is because the federal government is "the ultimate *parens*

1

*patriae* of every American citizen." *South Carolina v. Katzenbach*, 383 U.S. 301, 324 (1966). It is thus "no part of [a state's] duty or power to enforce [its citizens'] rights in respect of their relations with the federal government," because "[i]n that field it is the United States, and not the state, which represents them as *parens patriae*." *Mellon*, 262 U.S. at 485–86.

This Court reached the opposite conclusion in *Texas v. United States*, 555 F. Supp. 3d 351 (S.D. Tex. 2021), finding that the State of Texas had standing to sue the federal government in a *parens patriae* capacity. *See id.* at 376–80. But the Court should not do so here.

*First*, Defendants respectfully submit that this Court's decision in *Texas* cannot be squared with Supreme Court precedent. Although the Court recognized that, under *Mellon*, a state generally may sue as *parens patriae* to protect its quasi-sovereign interests in the health and economic well-being of its citizens, *see Texas*, 555 F. Supp. 3d at 376–80, nowhere did it address the categorical rule announced in *Alfred L. Snapp & Son* that a state lacks *parens patriae* standing to assert those interests against the federal government, *see* 458 U.S. at 610 n.16.[1]

*Second*, contrary to what this Court concluded in *Texas*, *see* 555 F. Supp. 3d at 380, the Supreme Court's decision in *Massachusetts v. EPA*, 549 U.S. 497 (2007), did not silently circumscribe this longstanding rule, *see, e.g.*, *Gov't of Manitoba*, 923 F.3d at 183 ("[W]e are unpersuaded by [the] argument that *Massachusetts v. EPA* alters our longstanding precedent that a State in general lacks *parens patriae* standing to sue the federal government.").[2] Indeed, *Massachusetts* "is not a *parens patriae* case." *Id.* There,

---

[1] The Courts of Appeals have understood *Alfred L. Snapp & Son* to stand precisely for this broad and categorical rule. *See, e.g.*, *Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179–183 (D.C. Cir. 2019) ("The traditional rule, the so-called '*Mellon* bar,' declares that a State lacks standing as *parens patriae* to bring an action against the federal government."); *City of N. Miami v. FAA*, 47 F.4th 1257, 1277 (11th Cir. 2022); *Virginia ex rel. Cuccinelli v. Sebelius*, 656 F.3d 253, 268–69 (4th Cir. 2011); *Citizens Against Ruining The Env't v. EPA*, 535 F.3d 670, 676 (7th Cir. 2008); *Wyoming ex rel. Sullivan v. Lujan*, 969 F.2d 877, 883 (10th Cir. 1992); *Nevada v. Buford*, 918 F. 2d 854, 858 (9th Cir. 1990); *see also Brackeen v. Haaland*, 994 F.3d 249, 292 n.13 (5th Cir. 2021) (en banc) (Dennis, J., op.) (citing *Katzenbach* for the same basic rule).

[2] *See, e.g.*, *Am. Trucking Ass'ns v. Smith*, 496 U.S. 167, 190 (1990) (explaining that there is no "*sub silentio* overrul[ing]" of prior Supreme Court precedent).

2

the Commonwealth of Massachusetts established standing by asserting its *own* rights under federal law (rather than the rights of its citizens) and a direct injury as a landowner (*i.e.*, the risk that rising sea levels would dimmish its sovereign territory). *See* 549 U.S. at 552. The Supreme Court thus "had no need to carve out an exception to the *Mellon* bar"—*i.e.*, the basic principle that a state lacks standing as *parens patriae* to sue the federal government—"in *Massachusetts v. EPA* because Massachusetts did not sue in its *parens patriae* capacity." *Gov't of Manitoba*, 923 F.3d at 182. And while *Massachusetts* discusses quasi-sovereign interests, it does so only in the context of the "special solicitude" owed to states in the standing analysis, and only with respect to Massachusetts's interest in "preserving its sovereign territory," which is, if anything, a uniquely quasi-sovereign interest of the States. 549 U.S. at 519–20 (citing *Georgia v. Tennessee Copper Co.*, 206 U.S. 230, 237 (1907)).

*Third*, while this Court's opinion in *Texas* cites several district court cases for the proposition that a state may sue the federal government in a *parens patriae* capacity to protect its citizens' health and well-being "where it does not challenge the operation of a federal statute," *see* 555 F. Supp. 3d at 379,[3] it does not grapple with the considerable body of case law to the contrary. For example, in *Government of Manitoba*, the State of Missouri sought to challenge the Bureau of Reclamation's compliance with the National Environmental Policy Act on behalf of its citizens in its *parens patriae* capacity. 923 F.3d at 176. The D.C. Circuit held, however, that Missouri "lack[ed] *parens patriae* standing to sue the federal government," including under the APA, and was "unpersuaded by [the] argument that *Massachusetts v. EPA* alters [this] longstanding" rule. *Id.* at 180–81, 183. The Seventh, Ninth, Tenth, and Eleventh Circuits have similarly held that states lack *parens patriae* standing to challenge actions by federal agencies. *See, e.g.*, *City of N. Miami*, 47 F.4th at 1277 (holding that South Florida municipalities lacked *parens patriae* standing to challenge the Federal Aviation Administration's compliance with, *inter alia*,

---

[3] This Court's opinion also cites *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439 (1945). But there, the State of Georgia sued a group of private railroad companies in its *parens patriae* capacity, not the federal government. *Id.* at 443.

the Clean Air Act and the Department of Transportation Act in promulgating flight-navigation procedures); *Citizens Against Ruining The Env't*, 535 F.3d at 676 (holding that Illinois lacked *parens patriae* standing to challenge the Environmental Protection Agency's permitting decisions under the Clean Air Act); *Wyoming*, 969 F.2d at 883 (holding that Wyoming lacked *parens patriae* standing to challenge Secretary of Interior's exchange of federal coal); *Nevada*, 918 F. 2d at 858 (holding that Nevada lacked *parens patriae* standing to challenge the Bureau of Land Management's grant of right-of-way under the Federal Land Policy and Management Act and the National Environmental Policy Act).

*Fourth*, that Texas attempts to assert constitutional claims against the federal government does not entitle it proceed in a *parens patriae* capacity. "It is the State's representation that usurps the role of the federal government, not the legal theory underlying its complaint." *Gov't of Manitoba*, 923 F.3d at 183. Accordingly, "[t]here is no reason to treat *parens patriae* actions alleging constitutional claims against the federal government differently from those alleging federal statutory claims." *Id.*; *accord Katzenbach*, 383 U.S. at 324 ("[A] State [does not] have standing as the parent of its citizens to invoke [the Fifth Amendment] against the Federal Government, the ultimate *parens patriae* of every American citizen."); *Brackeen*, 994 F.3d at 292 n.13 (Dennis, J., op.) (rejecting states' argument "that they have standing to bring an equal protection challenge in *parens patriae* on behalf of [their] citizens").

For these reasons, Texas's attempt to establish standing and irreparable harm based on alleged injuries to its purported quasi-sovereign interests in the health and well-being of its residents is misplaced. And because Texas cannot assert those interests against Defendants in a *parens patriae* capacity, it has failed to show that it would be within this Court's constitutional or equitable authority to issue a preliminary injunction protecting non-party Texas residents. *See Gill v. Whitford*, 138 S. Ct. 1916, 1929–30 (2018) (Because this Court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury."); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994)

4

(Consistent with traditional equity principles, "injunctive relief should be no more burdensome" to Defendants "than necessary to provide complete relief to the plaintiffs." (citation omitted)).

*GOA and GOF members.* The Fifth Circuit recently explained that the preliminary injunction pending appeal in *Mock* covers the members of the organizational plaintiff there. *See Mock v. Garland*, No. 23-10319 (5th Cir. May 26, 2023), ECF No. 78-2. However, even if this Court were to issue a preliminary injunction here, it should not cover the purported members of Plaintiffs Gun Owners of America ("GOA") and Gun Owners Foundation ("GOF"). That is because both Plaintiffs have failed to demonstrate associational standing. Indeed, both GOA and GOF fail to show that they function as traditional membership organizations which can assert standing on behalf of their members. Moreover, participation of individual members would be required in this matter, a further bar to associational standing. And even if GOA or GOF established standing, they do not demonstrate that their unnamed members will imminently suffer irreparable harm, let alone in a manner that can be collectively addressed via relief in this case. For all these reasons, any preliminary relief awarded in this matter cannot extend to members of the Plaintiff organizations.

Start with standing. "A preliminary injunction, like final relief, cannot be requested by a plaintiff who lacks standing to sue." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329–30 (5th Cir. 2020). At this stage, where GOA and GOF seek a preliminary injunction on behalf of their purported members, they "must clearly show that [they] likely [have] *associational* standing to bring its case on the merits." *Id.* Plaintiffs have failed to make such a showing.

As a prerequisite, organizations may assert associational standing only where they demonstrate key "indicia of membership," such as "a clearly articulated and understandable membership structure" with members who "elect[] the governing body." *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 829 (5th Cir. 1997) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333 (1977)). Looking first to GOF, while Plaintiffs assert that both "GOA and GOF represent similarly situated

5

gun owners across the country," there is no allegation that GOF is a membership organization, or that it has any claimed members of its own. Pls.' Reply at 31, ECF No. 29; *see also* Decl. of Erich M. Pratt ¶ 6 ("GOA and GOF together have more than two million members and supporters nationwide[.]"). Rather, the Complaint alleges only that GOF is a "Virginia non-stock corporation" that operates "as a nonprofit legal defense and educational foundation" and is "supported by gun owners across the country." Compl. ¶ 6.

Plaintiffs thus fail to clearly assert that GOF has any members at all. *See Gettman v. Drug Enf't Admin.*, 290 F.3d 430, 435 (D.C. Cir. 2002) (holding no associational standing for organization that "does not have any members"). Nor do Plaintiffs claim that GOF's "supporters" function as members by serving a clearly defined role and guiding group efforts, similar to active members of a traditional membership organization. *See Ass'n for Retarded Citizens of Dallas v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994) (holding no associational standing where organization's clients did "participate in and guide the organization's efforts"). In failing to demonstrate actual membership, or anything akin to traditional members, GOF lacks associational standing, and accordingly cannot seek an injunction on behalf of any claimed members.

That leaves GOA, which Plaintiffs at least describe as a "membership organization." Compl. ¶ 5. Nevertheless, Plaintiffs fail to "clearly show" that GOA likely has associational standing. Again, "organizations derive associational standing from their members," but GOA does not limit its claims to those of its members. *See Riverkeeper v. Taylor Energy Co., LLC*, 113 F. Supp. 3d 870, 876 (E.D. La. 2015). Rather, GOA purports to bring suit "on behalf of the interests of their members *and* supporters." Compl. ¶ 7 (emphasis added). Of course, associational standing cannot be predicated upon individuals that merely support a given group. *See Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022) ("[I]t is not enough for putative members simply to read a group's publications, subscribe to its e-mail list, or follow its Facebook page."); *Nemes v. Bensinger*, 336 F.R.D. 132, 138–39 (W.D. Ky.

2020) ("[T]he Campaign cannot manufacture its own standing by asserting the nebulous interests of an undefined population of voters, who happen to support the Campaign.").

And even limiting GOA's claims to its purported members, GOA appears to assert that those members include a wide array of corporations in addition to individual gun owners. *See* Compl. ¶ 8 (asserting that the "members and supporters of GOA and GOF . . . consist[] not only of individual gun owners, but also industry partners . . . including manufacturers, distributors, and retailers of 'stabilizing braces,' and manufacturers, distributors, and retailers of firearms equipped with stabilizing braces"); *see also id.* ¶ 9 (averring that "[m]embers and supporters of GOA/GOF include not only consumers" but "also industry members"). Yet associational standing may only be maintained by an organization with a "discrete, stable group of persons with a definable set of common interests," *Am. Legal Found. v. F.C.C.*, 808 F.2d 84, 90 (D.C. Cir. 1987). GOA cannot satisfy this requirement when its claimed membership includes not only individual gun owners, but corporations at seemingly every level of the gun industry.

Even assuming that GOA's claimed membership was sufficiently defined and cohesive—and it is not—associational standing would still be unavailable. Organizations may not sue on behalf of individuals simply because they are claimed as "members." Rather, courts look to multiple "indicia of membership," akin to that in a traditional membership organization, to determine whether a group provides the means by which its members "express their collective views and protect their collective interests." *Hunt,* 432 U.S. at 345. As referenced above, such "indicia" include: whether members elect organizational leadership, finance the activities of the group, adhere to a "clearly articulated and understandable membership structure," *see Friends of the Earth, Inc.*, 129 F.3d at 828–29, and whether members control the activities of the organization—*e.g.*, by "participat[ing] directly in making and implementing day-to-day decisions" of the group, *see Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 675–76 (E.D. La. 2010).

Plaintiffs fail to allege, let alone "clearly show," that GOA possesses any of these indicia of membership. The complaint and Declaration of Erich Pratt both provide only a bare allegation that GOA constitutes a "membership organization," without any detailed explanation as to the role that members play within the group. Compl. ¶ 5; Decl. of Erich Pratt ¶ 4, ECF No. 16-13. Plaintiffs do not claim that GOA members have any role in determining the leadership of the group, nor do Plaintiffs explain whether and to what extent GOA members finance the organization, whether members serve within a clear structure, or whether members effectively guide the organization on a day-to-day basis.

This type of standing inquiry is fact-intensive, and courts frequently determine the role of purported members by looking to the articles of incorporation, *see Concerned Citizens Around Murphy*, 686 F. Supp. 2d at 675–76, or bylaws of a plaintiff group, *see Students for Fair Admissions, Inc. v. Univ. of Tex.*, 37 F.4th 1078, 1084–85 (5th Cir. 2022), neither of which are in the record. Plaintiffs have accordingly failed to provide sufficient information that would clearly show GOA's eligibility for associational standing. *See Tex. Indigenous Council v. Simpkins*, 2014 WL 252024, at *3 (W.D. Tex. Jan. 22, 2014) (holding no associational standing where group failed to demonstrate "'indicia of membership' to assure the court that it is capable of representing the individuals that it claims as 'members'").

Moreover, even if GOA demonstrated that it was the type of membership organization that could assert associational standing, it has not established such standing here. A qualifying organization must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Speech First*, 979 F.3d at 330 (citation omitted).

8

On the first prong, Plaintiffs name a single member of GOA, Brady Brown, as purportedly having standing to sue on his own behalf. Yet the only injury alleged by Mr. Brown in the complaint is that he "wishes to continue to possess firearms . . . in their current configurations, without being forced to modify, destroy, surrender, or register the firearms." Compl. ¶ 4. Mr. Brown thus appears to recognize that he can retain his firearms through registration, which remains tax-free through May 31, thereby obviating any concerns about possible future enforcement actions. Mr. Brown makes no argument that registration itself will otherwise lead to economic or other costs, and instead the only apparent injury arising out of registration is the claimed "deprivation of constitutional rights." Pls.' Reply at 31. In other words, Mr. Brown claims that requiring registration of short-barreled rifles is a constitutional violation. This Court should conclude to the contrary, for reasons explained in Defendants' briefing. And the necessary consequence of such a conclusion is that Mr. Brown alleges no cognizable injury, lacks standing to sue, and therefore GOA has not identified a member that can bring suit in his own right. *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir. 2012) ("An organization lacks standing if it fails to . . . 'identify even one individual' member with standing") (citation omitted); *Children's Health Def. v. FDA*, 2023 WL 175004, at *6 (W.D. Tex. Jan. 12, 2023) (holding plaintiff group lacked associational standing where the court held that "the only identified members . . . failed to show that they independently possess Article III standing").

GOA lacks associational standing for the final reason that adjudication of this action requires participation of its individual members. "Courts assess this prong by examining both the relief requested and the claims asserted." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 551 (5th Cir. 2010). Associational standing is lacking where a "fact-intensive individual inquiry" is necessary to resolve claims or determine appropriate relief. *Id.*; *see also Residents of Gordon Plaza, Inc. v. Cantrell*, 2019 WL 2330450, at *2 (E.D. La. May 31, 2019) (holding organization lacked standing because sought injunctive relief required "individual participation" by members). That is the case here.

9

Mr. Pratt avers that GOA "members and supporters" will be harmed by the Final Rule "in different ways and to varying degrees." Decl. of Erich Pratt ¶ 22, ECF No. 16-13. For instance, he claims that some (presumably individual) GOA members will suffer Second Amendment violations, while others will "change the way they do business, including the nature and types of products they can offer for sale." *Id.* GOA also claims to have "heard from at least one member" who has an "independent risk of prosecution by court-martial." Compl. ¶ 14. Without individual member participation, it is impossible for this court to determine the appropriate scope of injunctive relief, which would provide redress to these "different" and "varying" harms, Pratt Decl. ¶ 22, allegedly suffered by GOA's "diverse group" of members, Compl. ¶ 8. For example, an injunction that would provide relief to individual gun owners would not necessarily extend similar relief to firearm "industry partners . . . including manufacturers, distributors, and retailers." *Id.* GOA cannot demonstrate associational standing when seeking such necessarily individualized relief. *See Bano v. Union Carbide Corp.,* 361 F.3d 696, 713 (2d Cir. 2004) ("An association lacks standing 'where the fact and extent of the injury that gives rise to the claims for injunctive relief would require individualized proof or where the relief requested would require the participation of individual members in the lawsuit.'").

If the Court holds to the contrary, and concludes that GOA has "clearly shown" that it likely has associational standing, any injunction should be limited to GOA members that have demonstrated irreparable harm. As explained above, a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill*, 138 S. Ct. at 1934, and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen*, 512 U.S. at 765. Indeed, the "Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it." *Gill*, 138 S. Ct. at 1933–34 (citation omitted). Here, even assuming that Mr. Brown could show irreparable harm in the form of a constitutional violation, a preliminary injunction should not issue as to the more than two million alleged members of GOA, especially where their

"different" and "varying" harms make it impossible to determine whether they might incur injuries similar to Mr. Brown, enjoy the same constitutional rights (for example, if they are corporations), and are eligible for the same relief. *VanDerStok v. BlackHawk Mfg. Grp. Inc.*, 2023 WL 2347438, at *4 (N.D. Tex. Mar. 2, 2023) (holding intervenor group failed to demonstrate that circumstances of a limited injunction "constitute[] an irreparable harm that can only be alleviated with an injunction" as to all group members). For these reasons, any injunction issued by this Court should cover only those named members who have demonstrated irreparable harm.

*Notice of supplemental authority.* Finally, Defendants respectfully notify the Court of an opinion that the United States District Court for the Eastern District of Virginia issued on May 26, 2023, in *Miller v. Garland*, --- F. Supp. 3d ---, 2023 WL 3692841 (E.D. Va. May 26, 2023). In that opinion, the court denied the plaintiff's motion to temporarily restrain and preliminarily enjoin the Bureau of Alcohol, Tobacco, Firearms, and Explosives' enforcement of the same rule challenged in this litigation, *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023). The court held that the plaintiff had not demonstrated a substantial likelihood of success on the merits of any of his claims. *Compare Miller*, 2023 WL 3692841, at *3–4 (statutory authority); *id.* at *6 (logical outgrowth); *id.* at *8 (arbitrary and capricious); *id.* at *9–10 (vagueness); *id.* (rule of lenity); *id.* at *10–12 (Second Amendment), *with* Pl.'s Mot. for Prelim. Inj. at 9–12, ECF No. 16 (statutory authority); *id.* at 20–22 (logical outgrowth); *id.* at 17–20 (arbitrary and capricious); *id.* at 15–16 (vagueness); *id.* at 11 (rule of lenity); *id.* at 12–13 (Second Amendment).

Dated May 30, 2023          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN (MT Bar No. 55816869)

11

MICHAEL DREZNER (VA Bar No. 83836)
TAYLOR PITZ (CA Bar No. 332080)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

On May 30, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice