IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, ) | | |
| GUN OWNERS OF AMERICA, INC., ) | | |
| GUN OWNERS FOUNDATION, and ) | | |
| BRADY BROWN, ) | | |
| ) | Case No. 6:23-cv-00013 | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| BUREAU OF ALCOHOL, TOBACCO, ) | | |
| FIREARMS AND EXPLOSIVES, UNITED ) | | |
| STATES DEPARTMENT OF JUSTICE, and ) | | |
| STEVEN M. DETTELBACH in his official ) | | |
| capacity as the Director of ATF, ) | | |
| ) | | |
| Defendants. ) | | |
| _____) | | |

## PRIVATE PLAINTIFFS' RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF

Taking the see-what-sticks approach, Defendants magnify this Court's inquiry about the appropriate scope of injunctive relief, instead offering a shotgun-pattern dissertation about why Plaintiffs allegedly do not have standing at all. Mere hours before the Final Rule's grace period is set to expire, Defendants have now offered no fewer than eight different theories as to why Plaintiffs GOA and/or GOF do not have representational standing, apparently now suddenly discovering that these plaintiffs supposedly could not even bring this case in the first place. *Cf.* ECF #22 at 45-46 (making only a passing, one-paragraph argument about standing in a 19,083-word response brief). Of course, Defendants' arguments have been implicitly rejected by the Fifth Circuit's injunction in *Mock*. Tellingly, these same Defendants have never before objected to standing by GOA and GOF in other similar cases, such as those challenging ATF's Final Rule on

1

"bump stocks,"[1] or ATF's Final Rule on a firearm "frame or receiver."[2]  For the reasons below, none of Defendants' arguments holds water, and this Court should grant the injunction requested in Plaintiffs' Motion (ECF #16-2), with the scope requested in Plaintiffs' supplemental filing of yesterday (ECF #46).

1. **GOF Has Established Representational Standing Even Without Official "Members."**

First, Defendants attack the representational standing of Plaintiff Gun Owners Foundation ("GOF"), claiming "there is no allegation that GOF is a membership organization, or that it has any claimed members of its own." Def. Supp. Br. at 6.  In support, Defendants rely on *Gettman v. Drug Enf't Admin*., 290 F.3d 430, 435 (D.C. Cir. 2002), a case that dealt with a subscription magazine that had "readers and subscribers," which the D.C. court held clearly was "not the same as membership." *Id*. at 435.  On the other hand, that court explained that representational standing *can be achieved* even by "'an organization that has no members in the traditional sense'" if "'the organization is the functional equivalent of a traditional membership organization,'" such as "selecting its leadership, guiding its activities, or financing those activities." *Id* (emphasis added).[3]  Defendants apparently acknowledge that "actual membership" is not the only path to representational standing.  *See* Def. Supp. Br. at 6 (indicating that "associational standing" may be

---

[1] *Gun Owners of America, et al. v. Barr, et al.*, No. 1:18-cv-1429-PLM (W.D Mi.)
[2] *Morehouse Enterprises, LLC, et al. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, et al.*, No. 3:22-cv-116-PDW (D.N.D.)
[3] *See also Fund Democracy, LLC v. SEC*, 278 F.3d 21, 26 (D.C. Cir. 2002) (rejecting representational standing because "Fund Democracy's course is steered entirely by Bullard, and Fund Democracy does not claim to receive funding from its purported members," and thus "it may have reasons for instituting suit other than to assert the rights of these alleged supporters") (emphasis added).

2

achieved with something "akin to traditional members").[4] The Fifth Circuit calls this the "indicia of membership" test. *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012).

Quite unlike the cases on which Defendants rely and, while GOF does not have official "members" (only supporters), it nonetheless is "the functional equivalent" of a "membership organization" for purposes of representational standing. As alleged in Plaintiffs' Complaint, GOF is "a nonprofit legal defense and educational foundation" that is "supported by gun owners across the country[5] and within this district…." ECF #1 at 6. Being that GOF is a nonprofit organization, rather than a for-profit "one-person business" (as in *Fund Democracy*) or a for-profit subscription magazine (as in *Gettman*), it by definition receives funding *only* (as in 100 percent) from its supporters, with the expressly stated "mission" to use those funds to "defend[] America's unique constitutional right to keep and bear arms, through education and legal assistance in important

---

[4] *See Apalachicola Riverkeeper v. Taylor Energy Co., L.L.C.*, 113 F. Supp. 3d 870, 876 (E.D. La. July 7, 2015) ("Neither compliance with corporate formalities nor the existence of a formal membership structure is required. Instead, the Court inquires whether an individual possesses certain 'indicia of membership,' such as … financing the organization's activities [or] associating with the organization voluntarily. This is a holistic test. The purpose is to determine whether an organization provides the means by which members 'express their collective views and protect their collective interests.'"). *See also Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 344-345 (1977) ("while the apple growers and dealers are not 'members' of the Commission in the traditional trade association sense … they alone finance its activities, including the costs of this lawsuit…. In a very real sense, therefore, the Commission represents the State's growers and dealers and provides the means by which they express their collective views and protect their collective interests."). This expression of "collective views" and protection of "collective interests" is quintessentially the function of nonprofit organizations, whether to protect seniors, veterans, or another class (such as gun owners), or to advocate for environmental, social justice, or other causes (such as the right to keep and bear arms).

[5] Nor are GOF's supporters "handicapped and disabled people" who "are unable to participate in and guide the organization's efforts," making Defendants' obtuse reference to *Association for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241 244 (5th Cir. 1994) particularly inapt.

firearms cases."[6]  *See also* ECF 1-1 at ¶ 10 ("GOA and GOF routinely litigate cases across the country in furtherance of their mission, on behalf of their members and supporters in various states.").  *See Funeral Consumers Alliance* at 344 n.9 (members "finance the organization's activities, including the case's litigation costs").  Since GOF's supporters finance entirely the nonprofit's activities (including its litigation), and the organization (as a function of its nonprofit status) may *only* engage in activities that benefit the public (and not with the purpose of private benefit or inurement), GOF clearly has representational standing.

## 2. GOA Clearly Possesses Representational Standing.

Second, Defendants attack Gun Owners of America, Inc. ("GOA").  Acknowledging that GOA is "at least describe[d] as a 'membership organization'" (Def. Resp. Br. at 6), Defendants nevertheless object that GOA "does not limit its claims" to its members, but rather seeks relief for "their [sic] members *and* supporters."  *Id.*  But Defendants misinterpret the use of the phrase "members and supporters" in Plaintiffs' pleadings, always used to refer to the "members" of GOA and the "supporters" of GOF (which does not have members).  Even so, by their splitting of hairs between members and supporters, Defendants apparently concede that relief *is appropriate* for GOA's "members" – just not its "supporters."[7]

Third, Defendants claim that representational standing "cannot be predicated upon individuals that [sic] merely support a given group."  Def. Resp. Br. at 6.  But Defendants' case does not stand for that proposition, denying representational standing to "putative members" who "simply read a group's publications, subscribe to its e-mail list, or follow its Facebook page."

---

[6] *See* GOF 2021 IRS Form 990 at 1, https://projects.propublica.org/nonprofits/organizations/521297380/202213189349318031/full
[7]  Even someone who financially "supported" GOA without formally becoming a member would still be in a role "akin to membership" for the purposes of representational standing, as discussed *infra*.

4

*Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2002). Again, GOA and GOF are funded entirely by their members and supporters, the category of persons who the D.C. Circuit has explained leads directly to representational standing. *Viasat* at 781 (those who "finance the organization").

Fourth, Defendants object that GOA's members include not only individual gun owners but also members of the firearms industry (including corporations). Def. Resp. Br. at 7. Of course, so too does the membership of the organizational plaintiff granted an injunction in *Mock*,[8] and so too does every other gun rights organization in the country (along with just about every nonprofit organization in existence). The fact that "members" include those that are corporate in form rather than only discrete "persons" is no barrier to representational standing. *See, e.g., N.Y. State Club Ass'n v. City of N.Y.*, 487 U.S. 1, 9 (1988) (finding that "a consortium of 125 other private clubs and associations in the State of New York" had representational standing). Defendants speculate that, because GOA represents different types of entities, there can be no "definable set of common interests" among them. *Id.* But again, the Fifth Circuit's two orders in *Mock* (the same result reached by two different panels) – granting an injunction – should be read to have considered and rejected this argument. Indeed, the organizational plaintiff in *Mock* made the *nearly-identical* allegation (arguably even more broad) that "its members and supporters … include gun owners, individuals who wish to acquire firearms and ammunition, individuals who wish to manufacture their own personal use firearms, licensed firearm retailers, shooting ranges, trainers and educators, and others…." *Mock v. Garland*, 23-cv-95 (N.D. Tx.) ECF #1 at ¶4. Defendants offer no theory as to how the *Mock* allegation led to an injunction but GOA's should not. Cf. ECF #1 at ¶¶11-12.

---

[8] https://www.firearmspolicy.org/80_lowers_joins_fpc_constitution_alliance; https://www.firearmspolicy.org/alliance

Nor does *American Legal Foundation v. FCC*, 808 F.2d 84, 90 (D.C. Cir. 1987) help Defendants, as the "membership" there was defined so broadly as to "purport to serve all who read newspapers, watch television, or listen to the radio." Nothing so broad exists here. Rather, GOA's members are united in their common interest in seeing the Final Rule overturned entirely. The fact that some members wish to *sell* braced firearms, while other members wish to *purchase* and *possess* them, does not create disjunctive interests, just gun owners who are members of GOA have common interests in the Rule being struck down, regardless of whether they possess their braced firearms for hunting, target shooting, self-defense, collecting, *etc*. All Defendants have done is commit a logical fallacy, positing that each of GOA's members is unique, but failing to establish that this arises to a difference in interests that is germane to the claims advanced in this litigation.

Fifth, Defendants claim that GOA cannot have representational standing because it has not offered a "detailed explanation as to the role that members play within the group." Def. Resp. Br. at 8. Again, Defendants offer no theory as to how the virtually indistinguishable allegations in the *Mock* complaint gave rise to an injunction, yet Plaintiffs here are not entitled to one. *Id*. at ¶¶5-7. Defendants speculate that GOA's "articles of incorporation" and "bylaws" are not included "in the record." Def. Resp. Br. at 8. But *Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 674 (E.D. La. 2010) looked to an entity's articles to determine if particular litigation was "germane to [an organization's] purpose" (the third factor of the representational standing test) – not the "role that members play[ed]" (the first factor). *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078 (5th Cir. 2022) actually undermines Defendants' claim, as it explicitly rejected the argument that the group could have no members because the "articles of incorporation state, '[t]he Corporation shall have no members.'"). *Id*. at 1084. Neither case says

6

that an analysis of articles and bylaws is a prerequisite to representational standing.[9] Even so, however, GOA's IRS Form 990 reports that GOA is an "organization that receives membership dues,"[10] a government document (tax return) of which this Court could take judicial notice (though it is not necessary to do so). At bottom, what Defendants are asking is for the Court to disregard GOA's sworn declaration that it has "members" whose interests it advances, a step at least one other court has refused to take. *See Marszalek v. Kelly*, 2021 U.S. Dist. LEXIS 107613, *12 ((N.D. Ill. June 9, 2021) ("In this case, the organizations' descriptions of their membership are supported by declarations from their officers. ... The Court has no reason to doubt the truthfulness of these declarations.").

Sixth, Defendants resurrect their claims about irreparable harm, and form them into a newly-minted standing argument. Defendants claim that the organizational plaintiffs do not have standing because they "name only a single member of GOA, Brady Brown," who Defendants believe is not irreparably harmed by the Final Rule. Def. Res. Br. at 9. Of course, on the very next page, Defendants point out how the declaration by the organizations alleges *all sorts of other* impending irreparable harms to their members and supporters, including to military service

---

[9] Nor is *Tex. Indigenous Council v. Simpkins*, 2014 U.S. Dist. LEXIS 7546, *9-13 (W.D. Tx. Jan. 22, 2014) helpful to Defendants, as it involved an unincorporated entity that (i) was "governed solely by Mr. Diaz," the only named plaintiff, (ii) where "no other individual has testified that they consider themselves to be a 'member'" of the group, (iii) where Diaz "testified that he … keeps the membership roster in his own head," (iv) where "there is no record of TIC activities that would even require financing … TIC's main activity is to disseminate information on indigenous rights through a YouTube channel that is operated solely by Mr. Diaz … evidence of activities that involve more members than just Mr. Diaz, TIC's evidence is scant," and (v) where "Mr. Diaz has admitted that TIC is only representing his own personal interests." In comparison, this case involves widely-known nonprofit organizations that have existed for decades, which have alleged millions of members (one of whom is named here), and which have a lengthy track record of engaging in similar litigation in the past on behalf of their members and supporters.

[10] https://projects.propublica.org/nonprofits/organizations/521256643/202233189349317083/full.

members. *Id*. at 10. Defendants cannot have it both ways, simultaneously arguing that Plaintiffs' allegations are *both too broad and too narrow* to justify relief. As for Brady Brown, Defendants demur that "the only apparent injury" he has alleged is the "claimed 'deprivation of constitutional rights.'"[11] (Def. Resp. Br. at 11). Of course, even though the Second Amendment is apparently disfavored by Defendants, it is not a "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees..." *McDonald v. City of Chi.*, 561 U.S. 742, 780 (2010). Nor are the harms caused by the Final Rule's violation of Fifth Amendment rights trivial. *See* ECF 16-2, p 15. As the Fifth Circuit holds, "the loss of constitutional freedoms 'for even minimal periods of time ... unquestionably constitutes irreparable injury.'" *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab*., 17 F.4th 604, 618 (5th Cir. 2021). Finally and again, Defendant's arguments that Plaintiffs are not suffering irreparable harm is implicitly foreclosed by the Fifth Circuit's orders issuing enjoining the Final Rule.

Seventh, Defendants argue that this case "requires participation of [GOA's] individual members," on the theory that GOA alleged that its members are harmed "in different ways and to varying degrees." Def. Resp. Br. at 10 (quoting Complaint ¶14). But this is a *non sequitur*. GOA and GOF's members and supporters have brought a distinct set of collective claims based on a discrete set of collective legal arguments. The varying harms caused to different persons does not

---

[11] On the contrary, Plaintiff Brown's declaration lists many irreparable harms, including that the "Final Rule is causing both [him] and [his] business serious and irreparable harm, not only in lost inventory, revenue, and customer goodwill, but also imposes upon [him] the risk of serious criminal penalties" and yes, the "infringement of constitutional rights." *See* ECF 16-14, ¶ 11. Plaintiff Brown further explained how his business has in inventory "at least one such firearm, properly classified as a pistol and equipped with a stabilizing brace," but would be classified as a short barrel rifle under the Rule. *Id*. at ¶6. And Mr. Brown explained how he is unable to sell or transfer his braced pistol in inventory, because he would be illegally transferring an unregistered NFA firearm. *Id*. at ¶9.

require individual participation to bring these claims and make these arguments. As Plaintiffs noted in their brief filed yesterday, "Plaintiffs do not seek individualized damages, but rather declaratory and injunctive relief." ECF #46 at 6. Therefore, contrary to Defendants' unsupported claim that "individualized relief" is required here (Def. Resp. Br. at 10), irrespective of the varying harms suffered by unique individuals, *one form of relief* covers them all – declaratory and injunctive relief invalidating the Final Rule.

Eighth, Defendants relatedly argue that "any injunction should be limited to GOA members that have demonstrated irreparable harm." Def. Resp. Br. at 10. On the contrary, "'individual participation' is not normally necessary when an association seeks … injunctive relief for its members." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996). Yet that is what would be required, if each GOA member were required to be "named" and to "demonstrate[] irreparable harm" on an individualized basis. Def. Resp. Br. at 11. At bottom, Defendants offer no cogent theory as to why the participation of potentially tens of thousands (or more) of GOA and GOF members and supporters is necessary to invalidate the Final Rule, or to have its enforcement enjoined as to those who the organizations represent.

### 3.  *Miller v. Garland* Is Unpersuasive.

Finally, Defendants direct this Court to *Miller v. Garland*, 2023 U.S. Dist. LEXIS 93105 (E.D. Va. May 26, 2023), a case brought by a *pro se* individual, and where a Virginia court recently found that the plaintiff did not demonstrate a "likelihood of success on the merits of any of his claims." Def. Resp. Br. at 11. Of the multiple problems with the *Miller* decision, perhaps the most glaring is that it bases much of its analysis off *Mock*. Worse, that court noted in a footnote that it was "aware that the Fifth Circuit issued an order in *Mock v. Garland*" (*id.* at *10 n.3), but failed

9

to grapple with the logical inference the Fifth Circuit had thereby rejected the district court's reasoning in *Mock*.

Problematically, the *Miller* court held that the Final Rule does not even implicate the Second Amendment, because braces are not firearms (*id*. at *31), glossing over the fact that the Second Amendment protects not only firearms but "arms" generally, and apparently not recognizing that the Rule regulates braced firearms, not braces themselves. The *Miller* court's logic that, "like a silencer, a stabilizing brace cannot cause harm on its own, is not useful independent of its attachment to a firearm, and a firearm remains an effective weapon without a brace" (*id*. at *31) is an overly simplistic analysis which, should it find traction, would allow government to ban anything that is not literally a firearm. For example, a firearm can fire (once) without its detachable magazine, and can fire without any type of sights (which cannot cause harm on their own, and are not useful independent of their attachment to a firearm). Ironically *Miller* entirely ignores the Supreme Court's decision in *U.S. v. Miller*, 307 U.S. 174, 181–82 (1939), which explained that "arms" also includes "ordinary military equipment," as shown in the Court's reference to founding era statutes that required militia members to be armed not only with firearms but also other "proper accoutrements" such as "a good bayonet and iron ramrod … a cartridge box … a good knapsack and canteen," and "Belt, a Pouch with a Box therein to contain not less than Twenty-four Cartridges … a proper Quantity of Powder and Ball, two spare Flints, a Blanket and Knapsack." If the word "arms" includes a belt, then it includes a brace.

In any event, *Miller* is not binding on this Court, is largely reliant on *Mock* which two Fifth Circuit panels have called into question, and thus is of limited (if any) persuasive value.

**Conclusion**

The governments' eleventh-hour attempt to inject entirely new challenges to Plaintiffs' standing into this case should be rejected, as each of Defendants' scattershot claims is equally meritless. The Court should enjoin the Final Rule in its entirety, nationwide, pending a resolution on the merits. Alternatively, this Court should enter an injunction that provides protection to those whose interests are represented by the organizational Plaintiffs.

Respectfully submitted,

Dated May 31, 2023

*/s/ Stephen D. Stambouliehh*
STEPHEN D. STAMBOULIEH
Mississippi Bar No. 102784
Southern District of Texas No. 3554925
Stambouliehh Law, PLLC
P.O. Box 428
Olive Branch, MS 38654
(601) 852-3440
stephen@sdslaw.us

ANTHONY R. NAPOLITANO
Arizona Bar No. 034586
Southern District of Texas No. 3837680
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E. Camelback Road, Suite 210
Phoenix, Arizona 85018
(602) 848-5449
anapolitano@bfsolaw.com

GILBERT J. AMBLER
Virginia Bar No. 94325
Southern District of Texas No. 3834055
20 S. Braddock St
Winchester, VA 22601
(540) 550-4236
gilbert@amblerlawoffices.com

*Counsel for Plaintiffs Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation*

## CERTIFICATE OF SERVICE

    I certify that on May 31, 2023, I filed the foregoing document through the Court's CM/ECF system, which automatically served it upon all counsel of record.

<em>/s/ Stephen D. Stamboulieh</em>