IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*,<br><br>*Defendants*. | Civil Action No. 6:23-cv-00013 |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEFING**

Pursuant to this Court's order, *see* Minute Entry (May 25, 2023), Defendants respectfully submit this response to Plaintiffs' supplemental briefing, *see* ECF Nos. 45, 46.

**I.      No Injunction Should Issue as to Members and Supporters of GOA and GOF.**

Plaintiffs Gun Owners of America ("GOA") and Gun Owners Foundation ("GOF") seek a preliminary injunction of ATF's Rule[1] as to their "members and supporters." Private Pls.' Resp. to the Court's Questions ("Private Pls.' Supp. Br."), ECF No. 46. While the Court should reject this request for the reasons explained in Defendants' supplemental brief, *see* Defs.' Supp. Br. in Opp. to Pls.' Mot. for Prelim. Inj. ("Defs.' Supp. Br.") at 5–11, ECF No. 47, a few points bear emphasis.

First, Plaintiffs again fail to carry their burden to clearly show that GOA and GOF operate akin to traditional membership organizations that can claim associational standing. Neither group provides evidence as to whether members elect group leadership, finance the organization, serve within a clear membership structure, and guide the group on a day-to-day basis. Any attempt to

---

[1] *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6,478 (Jan. 31, 2023) ("Rule").

provide evidence on these points now, when Defendants will be unable to fairly respond, would be untimely and prejudicial.

Second, Plaintiffs argue that individual participation of its members is not required because the groups seek injunctive relief. ECF No. 46 at 6. But the type of relief sought does not dictate whether individualized participation of a group's members will be required in a case, and thus whether associational standing is lacking. *See, e.g., Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009) (holding associational standing lacking due to "individualized element of coercion within this free exercise claim"); *Residents of Gordon Plaza, Inc. v. Cantrell*, 2019 WL 2330450, at *2 (E.D. La. May 31, 2019) (holding organization lacked standing because sought injunctive relief required "individual participation" by members).

Third, and likely recognizing this point, Plaintiffs move on to argue that denial of associational standing here would pointlessly result in individual litigation and "thousands of nearly-identical declarations from GOA and GOF's members and supporters, each attesting to indistinguishable facts and alleging identical harms." ECF No. 46 at 6. Yet this bare assertion is contradicted by the sworn statement of GOA and GOF Vice President Erich Pratt, averring that the groups' "members and supporters" will be harmed "in different ways and to varying degrees." Decl. of Erich Pratt ¶ 22, ECF No. 16-13. The only competent evidence submitted by Plaintiffs on this point demonstrates that their claimed members are differently—not identically—situated with respect to the effects of the Final Rule, such that their claims and sought relief are necessarily individualized.[2] If more were needed, Plaintiffs seek to extend their request for relief beyond their dissimilar members, to their "domiciliary cohabitants" and the "heirs and assigns of such persons," ECF No. 46 at 7, a request that only

---

[2] Plaintiffs simply fail to mention their "industry partners" repeatedly claimed as members and supporters in the Complaint. *See* Compl. ¶¶ 8-9 (citing as "members and supporters . . . manufacturers, distributors, and retailers"); Decl. of Erich Pratt ¶ 22 (averring that some "members and supporters" "will have to dramatically change the way they do business").

2

exacerbates the need for individualized participation of members to receive any appropriate relief. Associational standing, and corresponding entitlement to relief on behalf of members, is accordingly absent.

As a final point, Plaintiffs underscore that the harm at issue here is "not the payment of the $200 tax stamp that accompanies registration of short barrel rifles," but that "Plaintiffs' members and supports who have not registered their pistols" will be subject to NFA penalties on June 1, 2023. *Id.* at 8. The Rule, however, clearly notified Plaintiffs' members and supporters that their firearms may be subject to the NFA, and that they could avoid NFA penalties by selecting any of four compliance options. *See* 88 Fed. Reg. at 6,570. "A party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted." *Div. 80, LLC v. Garland*, No. 3:22-cv-148, 2-22 WL 3648454, at *5 (S.D. Tex. Aug. 23, 2022) (citations omitted); *Texas v. Biden*, 10 F.4th 538, 558 (5th Cir. 2021). As any risk of incurring NFA penalties at this point is self-inflicted, such risk is insufficient to justify preliminary relief.

## II. No Injunction Should Issue as to Plaintiff State of Texas.

### A. Texas Has Not Demonstrated Irreparable Harm to its Sovereign or Quasi-Sovereign Interests.

<u>*Parens patriae.*</u> Texas contends that, absent a preliminary injunction, it will suffer irreparable harm to its quasi-sovereign interests in "the health and well-being of its residents." Tex. Supp. Br. at 3, ECF No. 45. But Texas fails to acknowledge the long-settled rule announced in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), that a "State does not have standing as *parens patriae* to bring an action against the Federal Government" to protect its residents' health and well-being, *id.* at 610 n.16 (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923)). Nor does Texas grapple with any of the Court of Appeals decisions applying that rule in rejecting similar efforts by states to proceed as

*parens patriae* against the federal government. *See* Defs.' Supp. Br. at 2 n.1 (citing cases).[3] There is thus no legally sound basis upon which to find that Texas has standing to seek injunctive relief to protect its residents' health and well-being.

But even assuming the contrary were true, Texas has offered no evidence to support its claim that its residents' well-being will be irreparably harmed absent a preliminary injunction. *See* Tex. Supp. Br. at 3–4. Although Texas suggests that its "residents rely on stabilizing braces" to safely handle pistols for self-defense, *id.*, the record is devoid of any evidence substantiating that claim. *See White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (explaining that a plaintiff must substantiate any claim of irreparable injury with "independent proof, or no injunction may issue"). And at any rate, neither the Rule nor the NFA prohibits possession of brace-equipped pistols, *see* 88 Fed. Reg. at 6,478, so there is no reason (attributable to the Rule) that Texas residents cannot keep possessing such weapons. *See Wis. Gas. Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (explaining that a plaintiff "must show that the alleged harm will directly result from the action which [he] seeks to enjoin").

*Sovereign interests.* Texas also claims that the Rule causes it a direct injury by essentially changing the meaning of a state law regulating the manufacture, possession, and sale of short-barreled firearms, *see* Tex. Penal Code § 46.05(a)(1)(c), thus preventing Texas from enforcing the law as it wishes. But the Rule in no way affects the meaning of Texas law or constrains Texas's authority to interpret, administer, or enforce Texas Penal Code section 46.05(a)(1)(C).

Under that statute, a person is generally prohibited from possessing "a short-barrel firearm," unless it is (i) "registered in the National Firearms Registration and Transfer Record maintained by" ATF, (ii) "otherwise not subject to [the NFA's] registration requirement," or (iii) "classified as a curio

---

[3] Though Texas cites *Government of Manitoba v. Bernhardt*, 923 F.3d 173 (D.C. Cir. 2019), it shrugs off that decision as "just an application of the Supreme Court's so-called '*Mellon* bar,'" Tex. Supp. Br. at 4 n.4, without making any effort to show how the D.C. Circuit misapplied Supreme Court precedent in holding that the State of Missouri lacked standing to challenge a federal project in a *parens patriae* capacity to protect its residents from alleged harms, *Gov't of Manitoba*, 923 F.3d at 178–83.

4

or relic by the United States Department of Justice." The upshot of Texas's argument, it seems, is that the scope of section 46.05(a)(1)(C)'s prohibition is necessarily co-extensive with the NFA's regulation of "firearms" that meet the definitions provided under 26 U.S.C. § 5845(1)–(4). Or stated more simply, if a short-barreled shotgun or rifle is subject to the NFA's requirements, then, in Texas's view, it must be prohibited under section 46.05(a)(1)(C).

But that's poor statutory construction. Before considering whether a weapon has been registered under the NFA or is subject to the NFA's registration requirement, section 46.05(a)(1) requires a weapon to be "a short-barrel firearm" to fall within its prohibition. *See* Tex. Penal Code § 46.05(a)(1)(C). Yet nothing ties the definition of that statutory term to any definition provided under the NFA or any other federal law. So, contrary what it suggests, Texas can construe that term as narrowly (or as broadly) as it sees fit. Whether a weapon falls within the section 46.05(a)(1)(C)'s definition of "short-barrel firearm" is thus a matter wholly within Texas's sovereign authority to determine, and the Rule in no way constrains that authority.

Although that alone forecloses the claim that Texas's sovereign authority is harmed by the Rule, Texas's other arguments are also meritless. *First*, Texas suggests that "there was no hint" that brace-equipped pistols could fall within the NFA's definition of "firearm" when the legislature enacted the exception in section 46.05(a)(1) for weapons "subject to [the NFA's] registration requirement." *See* Tex. Supp. Br. at 3 (quoting Tex. Penal Code § 46.05(a)(1)). But that language appears to have been added to section 46.05(a)(1) in 2017. *See* 2017 Tex. Sess. Law. Serv. Ch. 155 (H.B. No. 1819). As Defendants have already explained, *see* Defs.' Opp. to Pls.' Mot. for Prelim. Inj. ("PI Opp.") at 6, ECF No. 22, ATF had classified multiple weapons configured with different brace devices as "firearms" subject to the NFA as early as 2014, *see also* 88 Fed. Reg. at 6,484.

*Second*, this case is not akin to *Texas v. Becerra*, 577 F. Supp. 3d 527 (N.D. Tex. 2021). There, the court found that the challenged federal regulation created a conflict with Texas law, such that

5

regulated entities could not comply with both. *Id.* at 557. That conflict, the court held, would pressure Texas either to amend or decline to enforce its law, thus irreparably harming Texas's sovereignty. *Id.* But here, there is no comparable conflict between section 46.05(a)(1)(C)'s prohibition on certain "short-barrel firearms" and the Rule's interpretation of the NFA's definition of "rifle." Nor is there any reason Texas would need to "amend" or "decline to enforce" section 46.05(a)(1)(C) if it wished to construe the scope of that statutory provision so as not to apply to brace-equipped weapons. *Contra* Tex. Supp. Br. at 3.

### B. Texas Has Not Demonstrated Irreparable Harm From Compliance Costs.

Texas also alleges that its costs of complying with the Rule amount to irreparable harm. *See* Tex. Supp. Br. at 5. But the Supreme Court has made clear that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction," and preliminary relief "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC*, 555 U.S. 7, 22 (2008). "[S]ome possibility of irreparable injury" is insufficient. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009) (citations omitted); *accord Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("[Irreparable] harm . . . must be more than speculative[.]" (citations omitted)).

To date, Plaintiffs have submitted hundreds of pages of filings in this case. Yet nowhere has Texas directly alleged that one of its law enforcement agencies actually possesses a single brace-equipped weapon that, under the Rule, qualifies as an NFA firearm that must be registered, modified, or destroyed to comply with the NFA.[4] Thus, even setting aside that Texas has not provided any evidence to substantiate its estimated compliance costs, it has not adequately alleged that any of its

---

[4] *See* Compl. ¶ 18, ECF No. 1 (alleging only that "Defendants admit that Texas police who possess previously legal handguns with stabilizing braces will have to expend funds to register those weapons" in 126-page Complaint (citing 88 Fed. Reg. at 6,567); Pls.' Mot. for Prelim. Inj. at 23–24, ECF No. 16 (alleging same in nearly 200-page submission in support of motion for preliminary injunction); Pls.' Reply in Support of Mot. for Prelim. Inj. at 32–33, ECF No. 29 (alleging "Texas will also experience irreparable injury for every law enforcement officer who must now, and in the future, register his brace with the ATF to comply with the NFA").

law enforcement agencies will need to take any action to comply with the Rule. *Cf. Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (*complying* with the invalid regulation may produce irreparable harm). Further, this issue was raised both in Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and at the recent status conference. *See, e.g.*, PI Opp. at 45 ("'[Texas] has offered no evidence substantiating the allegation that any of its law enforcement agencies possess pistols with stabilizing braces in their inventories. Nor have they shown the estimated compliance costs of surveying police inventories to identify these weapons."); Tex. Supp. Br. at 5 ("As Texas acknowledged at the hearing, it has not introduced a declaration delineating specific costs from this burden."). But in response, Texas still asks the Court to speculate: it alleges that "[a]ny Texas law enforcement agency that owns stabilizing braces will have to register them," and given the number of braces in the United States (estimated 3 million) and the size of Texas law enforcement (80,000 officers), the Court should assume that some of those braces are possessed by Texas law enforcement, and therefore, the State is "likely either now or in the future to incur compliance costs." *Id.* at 5. That Texas has had multiple opportunities to provide the Court with direct allegations of harm and evidence of compliance costs, but has not, falls well short of its required "clear showing" that "irreparable injury is likely." *Winter*, 555 U.S. at 22.

Texas contends its speculative assertions of harm are enough. First, Texas asserts that "the agency's own factfinding" can support harm as can "the basic laws of economics." *Id.* (quoting *Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 382 (D.C. Cir. 2020)). *Competitive Entertainment*, however, considered whether injury was sufficient for Article III standing, not irreparable harm, and further, Texas does not explain why a State's bare allegations are equivalent to agency factfinding or the laws of economics. 970 F.3d at 382. Texas also cites *Louisiana v. Biden*, 55 F.4th 1017, 1034– 5 (5th Cir. 2022), for the proposition that there is less need for an "accurate prediction" of a policy's numerical effect when that effect is obviously significant for purposes of demonstrating irreparable harm. But

7

as explained, any effect here is not obvious, let alone obviously significant, as Texas has not only failed to provide an accurate prediction of the estimated cost of complying with the Rule, but also has not shown that law enforcement departments will need to take actions to comply with the Rule at all.

Thus, Texas's alleged compliance costs provide no basis for awarding preliminary relief.

### III. No Nationwide Injunction Should Issue.

Private Plaintiffs ask this Court to enjoin the Rule nationwide.[5] ECF No. 46 at 2–3. The Court should decline the invitation for two reasons. First, well-established constraints on this Court's equitable authority counsel against entry of a nationwide injunction. Second, the Fifth Circuit's orders in *Mock v. Garland* similarly indicate that a nationwide injunction here would be inappropriate.

General principles of equity refute any support for a nationwide injunction. This Court has made clear its "deep skepticism of nationwide injunctions in general." *Texas v. United States*, 524 F. Supp. 3d 598, 666 (S.D. Tex. 2021) (Tipton, J.). And rightly so, as Chief Judge Sutton of the Sixth Circuit put it, "a district court should think twice—and perhaps twice again—before granting universal anti-enforcement injunctions against the federal government." *Arizona v. Biden*, 31 F.4th 469, 484 (6th Cir. 2022) (Sutton, C.J., concurring). Indeed, the authority to issue such injunctions has been repeatedly questioned. *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 600 (2020) (Gorsuch, J., concurring) ("Universal injunctions have little basis in traditional equitable practice."); *Trump v. Hawaii*, 138 S. Ct. 2392, 2429 (2018) (Thomas, J., concurring) ("Universal injunctions are legally and historically dubious."). What's more, as Justice Thomas explained, nationwide injunctions take a "toll on the federal court system" by "preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump*, 138 St. Ct. at 2425 (Thomas, J., concurring).

---

[5] It does not appear that this request is joined by Texas, which seeks only an injunction in the state. *See* Tex. Supp. Br. at 6–7.

The danger of cutting short adjudications in other districts, is especially acute here, as there are at least seven other federal court actions challenging the Final Rule, including cases in the Fourth, Eighth, and Eleventh Circuits. A nationwide injunction would plainly threaten the ability of other courts to rule upon those cases on their own merits, a concern that this Court and the Fifth Circuit have also shared. *Texas v. United States*, 555 F. Supp. 3d 351, 439–40 (S.D. Tex. 2021) (Tipton, J.);[6] *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (explaining that "[p]rinciples of judicial restraint" counsel against granting relief to non-parties—particularly where, as here, "[o]ther courts are considering these same issues" at the same time).

But the threat posed by a nationwide injunction here goes even further. In the case cited by Plaintiffs, *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 388–89 (5th Cir. 2023) (en banc), the Fifth Circuit addressed concerns that upholding a nationwide injunction would "award[] relief to parties who have already lost their claims elsewhere." The Fifth Circuit explained that such a conflict would not result in that case because there were "no cases where plaintiffs have lost their claims *on the merits*." *Id*. Not so here. In a challenge to the same Rule before this Court, the United States District Court for the Eastern District of Virginia denied the plaintiff a preliminary injunction in *Miller v. Garland*, --- F. Supp. 3d ---, 2023 WL 3692841 (E.D. Va. May 26, 2023), finding that the plaintiff was not likely to succeed on the merits of any of his claims. A nationwide injunction issued here would provide the plaintiff in *Miller* with the very relief that was denied in his own lawsuit. Similarly, a nationwide injunction could well conflict with likely forthcoming rulings from other courts around the country.

Simply put, "[t]he Court's constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," *Gill v. Whitford*, 138 S. Ct. 1916, 1933–34 (2018) (citation omitted), and Plaintiffs have no cognizable interest in an injunction that would reach beyond the parties before

---

[6] Though this Court entered a nationwide injunction in that matter, it did so largely due to the need to "ensure uniformity in immigration policies," which is not present here. *Id.* at 438-39.

the Court. Yet Plaintiffs "suggest" that a nationwide injunction "is the best course of action" in order to put "everyone on notice that the Rule is likely defective." ECF No. 46 at 3. Setting aside that Plaintiffs have no legal interest in providing "notice" of a court decision to "everyone," a nationwide injunction is not an informational bulletin. Plaintiffs' purported desire to provide "notice" to non-parties does not support its request for nationwide relief.

Finally, Plaintiffs suggest that the Court should enter a nationwide injunction because an injunction tailored to the parties and their members would be challenging to implement. As a threshold point, organizational Plaintiffs lack standing to seek a preliminary injunction on behalf of their claimed members, as explained above. In any event, possible difficulty in providing tailored relief cannot justify, as recourse, extending relief to everyone in the nation. *Dep't of Homeland Sec.*, 140 S. Ct. at 600 (2020) (Gorsuch, J., concurring) (explaining that nationwide injunctions feature a "basic flaw—they direct how the defendant must act toward persons who are not parties to the case"). And unlike the case cited by Plaintiffs, there is no suggestion that here the Government might fail to "comply with an injunction limited to the plaintiffs' members." *Feds for Med. Freedom v. Biden*, 63 F.4th at 387–88.

But even looking beyond the limits of this Court's constitutional and equitable authority, the Fifth Circuit in *Mock* has now twice made clear that the injunctive relief issued in that case is not a nationwide injunction. The Fifth Circuit initially ordered an injunction pending appeal as to plaintiffs in that action, ECF No. 41-1, and later clarified that the injunction would extend to, *inter alia*, members of the plaintiff organization there. *Mock v. Garland*, No. 23-10319 (5th Cir. May 26, 2023), Doc. 78-2. But the Fifth Circuit could hardly have been clearer as to its views on the propriety of a nationwide injunction in this context, as it held in its second order that "[a]ny relief beyond what is explicitly requested, which arguably would be tantamount to a nationwide injunction, is DENIED." *Id.* at 2. Just as the Fifth Circuit rejected any relief "tantamount to a nationwide injunction," this Court should deny Plaintiffs' explicit request for a nationwide injunction.

### IV. Plaintiffs' Motion for Preliminary Injunction May Not Be Consolidated With a Trial on the Merits Without Notice to the Parties.

Alternatively, Texas asks the Court to consolidate its preliminary injunction considerations with a trial on the merits pursuant to Federal Rule of Civil Procedure 65(a)(2). "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits"; however, Rule 65(a)(2) permits consolidation of the preliminary injunction hearing with the merits, but only if the parties "receive clear and unambiguous notice" of the court's intent to consolidate "before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted). Defendants have not been provided with any such notice. *See Wohlfahrt v. Mem'l Med. Ctr.*, 658 F.2d 416, 418 (5th Cir. 1981) ("[S]ufficient notice is required to permit the parties to develop their cases fully."). Moreover, Defendants have not been provided a full opportunity to present their case, particularly with respect to Plaintiffs' arbitrary-and-capricious claim. *See* Compl. ¶¶ 202–34. Courts decide whether the agency's action was arbitrary and capricious by reviewing the administrative record compiled by the agency at the time it made the decision. 5 U.S.C. § 706(2)(A); *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 925 (5th Cir. 2012). Here, the administrative record is not before the Court at the preliminary-injunction stage, and Plaintiffs' arbitrary-and-capricious claim should be properly resolved at summary judgment. Lastly, consolidation may be appropriate only "[w]hen the eventual outcome on the merits is plain at the preliminary injunction stage," but the eventual outcome on the merits of Plaintiffs' case is anything but plain. *Grace v. Dist. of Columbia*, 187 F. Supp. 3d 124, 151 (D.D.C. 2016). Indeed, the only two reasoned decisions considering similar challenges to the Rule have denied preliminary relief based on failure to show a likelihood of success on the merits. *Mock v. Garland*, ---F. Supp. 3d---, 2023 WL 2711630 at *1 (N.D. Tex. Mar. 30, 2023), *appeal filed*, No. 23-10319 (5th Cir. Mar. 31, 2023); *Miller v. Garland*, ---F. Supp. 3d---, 2023 WL 3692841 at *24–*25 (E.D. Va. May 26, 2023). Consolidation is thus inappropriate.

Dated May 31, 2023       Respectfully submitted,

                BRIAN M. BOYNTON
                Principal Deputy Assistant Attorney General

                BRIGHAM J. BOWEN
                Assistant Branch Director

                */s/ Jody D. Lowenstein*
                JODY D. LOWENSTEIN (MT Bar No. 55816869)
                MICHAEL DREZNER (VA Bar No. 83836)
                TAYLOR PITZ (CA Bar No. 332080)
                Trial Attorneys
                U.S. Department of Justice
                Civil Division, Federal Programs Branch
                1100 L Street NW
                Washington, DC 20005
                Phone: (202) 598-9280
                Email: jody.d.lowenstein@usdoj.gov

                *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

On May 31, 2023, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice