**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION**

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
|      *Plaintiffs*, | |
|    v. | Civil Action No. 6:23-cv-00013 |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES, *et al.*, | |
|      *Defendants*. | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

    I.    The Tax Anti-Injunction Act prohibits relief that would restrain the assessment or collection of the NFA's tax. ........................................................................1

    II.   The Rule properly interprets the statutory definition of "rifle." ...........................3

    III.  The Rule is not arbitrary or capricious. ................................................................4

    IV.  The Rule complies with the APA's procedural requirements ................................5

    V.   Neither the Rule nor the NFA violates the Second Amendment. ..........................6

    VI.  The Rule is not unconstitutionally vague. ............................................................9

    VII. The NFA and the Rule are otherwise constitutional. .........................................10

    IX.  Any relief should be narrowly tailored to redress Plaintiffs' injuries. ...............10

        A.   Universal vacatur of the Rule is unwarranted. ...........................................10

        B.   Plaintiffs are not entitled to their proposed injunction. ............................13

CONCLUSION ..................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

*Animal Welfare Institute v. Martin,*
　　623 F.3d 19 (1st Cir. 2010) ............................................................................. 1, 5

*Arizona v. Biden,*
　　40 F.4th 375 (6th Cir. 2022) ..............................................................................12

*Bezet v. U.S.,*
　　714 F. App'x 336 (5th Cir. 2017) .........................................................................5

*Brown v. McLane,*
　　807 F. App'x 410 (5th Cir. 2020) ........................................................................14

*Campbell v. Texas,*
　　633 S.W.2d 592 (Tex. App. 1982) ........................................................................8

*Cargill v. Garland,*
　　57 F.4th 447 (5th Cir. 2023) ........................................................................ 11, 13

*Cent. & S.W. Servs. v. EPA,*
　　220 F.3d 683 (5th Cir. 2000) ..............................................................................13

*CIC Services, LLC v. IRS,*
　　593 U.S. 209 (2021) .............................................................................................2

*FCC v. Fox Television Stations, Inc.,*
　　556 U.S. 502 (2009) .............................................................................................4

*Feds for Med. Freedom v. Biden,*
　　63 F.4th 366 (5th Cir. 2023) ..............................................................................11

*Firearms Regul. Accountability Coal. v. Garland,*
　　2023 WL 5942365 (D.N.D. Sep. 12, 2023) ..........................................................7

*Gill v. Whitford,*
　　585 U.S. 48 (2018) ....................................................................................... 11, 14

*Hollis v. Lynch,*
　　827 F.3d 436 (5th Cir. 2016) ...............................................................................7

*Linn v. Chivatero,*
　　714 F.2d 1278 (5th Cir. 1983) .............................................................................2

*Louisiana v. Becerra,*
　　20 F.4th 260 (5th Cir. 2021) ..............................................................................12

*Mock v. Garland,*
   75 F.4th 563 (5th Cir. 2023) ................................................................................. 5, 6

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1 (2022) ................................................................................................... 5, 8

*Posters 'N' Things v. U.S.,*
   511 U.S. 513 (1994) .................................................................................................. 3

*Second Amendment Found. v. ATF,*
   2023 WL 7490149 (N.D. Tex. Nov. 13, 2023) ...................................... 5, 6, 7, 8

*Sig Sauer, Inc. v. Brandon,*
   926 F.3d 598 (1st Cir. 2016) ................................................................................... 3

*Sherley v. Sebelius,*
   689 F.3d 776 (D.C. Cir. 2012) ................................................................................ 6

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
   600 U.S. 181 (2023) ................................................................................................ 15

*Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n,*
   989 F.3d 368 (5th Cir. 2021) ................................................................................. 13

*Texas v. ATF,*
   2023 WL 7116844 (S.D. Tex. Oct. 27, 2023) ..................................................... 14

*Texas v. U.S.,*
   50 F.4th 498 (5th Cir. 2022) ................................................................................. 13

*U.S. v. Berger,*
   2024 WL 449247 (E.D. Pa. Feb. 6, 2024) ............................................................. 6

*U.S. v. Bradley,*
   2023 WL 2621352 (S.D. W. Va. Mar. 23, 2023) ................................................... 9

*U.S. v. Dangleben,*
   2023 WL 6441977 (D.V.I. Oct. 3, 2023) ................................................................ 9

*U.S. v. Dixson,*
   2023 WL 7416327 (E.D. Mo. Aug. 30, 2023) ....................................................... 9

*U.S. v. Golding,*
   332 F.3d 838 (5th Cir. 2003) ................................................................................... 8

*U.S. v. Gonzales,*
   2011 WL 5288727 (D. Utah Nov. 2, 2011) ............................................................ 7

*U.S. v. Holton,*
  639 F. Supp. 3d 704 (N.D. Tex. 2022) ...................................................................... 8, 9

*U.S. v. Matthews,*
  312 F.3d 652 (5th Cir. 2002) ...................................................................................... 6

*U.S. v. Miller,*
  307 U.S. 174 (1939) ................................................................................................... 6

*U.S. v. Padgett,*
  2023 WL 3483929 (D. Alaska Jan. 4, 2023) ............................................................... 9

*U.S. v. Padilla,*
  23 F.3d 1220 (7th Cir. 1994) ..................................................................................... 1

*U.S. v. Royce,*
  2023 WL 2163677 (D.N.D. Feb. 22, 2023) ................................................................. 6

*U.S. v. Shepherd,*
  2024 WL 71724 (S.D. Miss. Jan. 5, 2024) .................................................................. 8

*U.S. v. Simien,*
  655 F. Supp. 3d 540 (W.D. Tex. 2023) ....................................................................... 7

*U.S. v. Sredl,*
  2023 WL 3597715 (N.D. Ind. May 23, 2023) ............................................................. 9

*U.S. v. Texas,*
  599 U.S. 670 (2023) ............................................................................................ 11, 12

*U.S. v. Trujillo,*
  670 F. Supp. 3d 1235 (D.N.M. 2023) ..................................................................... 8, 9

*Univ. of Texas v. Camenisch,*
  451 U.S. 390 (1981) ................................................................................................... 6

*Wash. St. Grange v. Wash. St. Republican Party,*
  552 U.S. 442 (2008) ................................................................................................. 10

*Watterson v. ATF,*
  2024 WL 897595 (E.D. Tex. Mar. 1, 2024) ............................................................ 3, 7

**Federal Statutes**

26 U.S.C. § 5845 ............................................................................................................ 3

26 U.S.C. § 5861 .......................................................................................................... 10

26 U.S.C. § 7421 ............................................................................................................ 1

## INTRODUCTION

Over the last decade, firearm manufacturers and sellers have marketed short-barreled rifles equipped with so-called "stabilizing braces." In doing so, many maintained to consumers that brace-equipped weapons are not subject to longstanding regulations on short-barreled rifles under the National Firearms Act ("NFA"), even though the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") never interpreted the statute that way. In response to the resulting widespread evasion of federal law, ATF issued a rule explaining when a brace-equipped weapon is a short-barreled rifle under the NFA. *Factoring Criteria for Firearms With Attached "Stabilizing Braces,"* 88 Fed. Reg. 6478 (Jan. 31, 2023) ("Rule"). As explained in Defendants' summary-judgment motion, ECF No. 88 ("Defs.' Br."), this Rule is consistent with the NFA, reasonably explained, procedurally compliant, and constitutionally sound. In their reply, ECF No. 89 ("Reply"), Plaintiffs offer no persuasive response to Defendants' jurisdictional or merits arguments. This Court should therefore grant summary judgment in Defendants' favor.

## ARGUMENT

**I.    The Tax Anti-Injunction Act prohibits relief that would restrain the assessment or collection of the NFA's tax.**

In their opening brief, Defendants argued that the Tax Anti-Injunction Act ("AIA"), 26 U.S.C. § 7421(a), bars Plaintiffs' claims to the extent they seek to restrain the NFA's enforcement against any brace-equipped pistols. Defs.' Br. 11–12. In response, Plaintiffs disavow seeking any such relief. Reply 3. They have thus disclaimed any remedy that would prevent ATF from applying the NFA to any brace-equipped pistol that Plaintiffs make, transfer, or purchase, and collecting the requisite tax.[1]

Either way, Plaintiffs' arguments are misplaced. While they concede that the AIA bars relief

---

[1] Though Plaintiffs' disavowal seems in tension with their challenges to the NFA, courts must hold parties "to their choices" when they "disavow[]" a "remed[y]," *Animal Welfare Institute v. Martin*, 623 F.3d 19, 30 (1st Cir. 2010), even if it is "the only relief that [would be] appropriate to the error" a plaintiff "assigns," *U.S. v. Padilla*, 23 F.3d 1220, 1224–1225 (7th Cir. 1994).

1

that directly restrains assessment or collection of the NFA's tax, Plaintiffs suggest that the AIA permits an injunction restraining enforcement of other NFA requirements. Reply 2. But those requirements are part of the NFA's integrated taxing scheme and facilitate enforcement of the taxes. Defs.' Br. 12. Enjoining enforcement of, *e.g.*, the NFA's registration requirement would thus "restrain" the "collection of information that would aid in" tax assessment—precisely the type of relief the Fifth Circuit has recognized the AIA bars. *Linn v. Chivatero*, 714 F.2d 1278, 1282 (5th Cir. 1983).

*CIC Services, LLC v. IRS*, 593 U.S. 209 (2021), does not support the opposite conclusion. There, the Supreme Court held that the AIA did not bar a lawsuit challenging a "standalone reporting requirement, whose violation" could result in a tax penalty. *Id.* at 226. So while the lawsuit, if successful, would have restrained the collection of tax penalties for any violation of the challenged reporting requirement, the Court explained that the requirement and the tax were "several steps removed from each other." *Id.* at 220–21. And because the tax in question constituted a penalty, applying the AIA's prohibition would have meant that a party could not bring a challenge unless it first violated the requirement and subjected itself to criminal punishment. *Id.* at 221–22.

Here, by contrast, the NFA's registration requirement is not "several steps removed" from the statute's tax: it is a critical part of the NFA's taxing scheme. Indeed, unlike in *CIC*, where the plaintiff was "nowhere near … tax liability," *id.* at 221, the NFA's tax liability attaches immediately if a Plaintiff transfers or makes an NFA firearm, and registration is necessary to allow ATF to assess and collect the applicable tax. That is markedly different than the situation in *CIC*. The NFA's tax also is not a penalty; it is an excise tax assessed upon a party's compliance with the NFA's registration requirement. And unlike in *CIC*, no Plaintiff must subject himself to criminal sanctions to challenge the NFA's application to a particular weapon. Rather, Plaintiffs can register any brace-equipped short-barreled rifles they make, transfer, or purchase, pay the requisite taxes, and then sue for refunds, at which time they can litigate the legality of applying the NFA's taxing scheme to their weapons. Defs.' Br. 12.

2

## II.    The Rule properly interprets the statutory definition of "rifle."

Plaintiffs challenge the Rule's interpretation of the NFA's definition of "rifle," arguing that it includes brace-equipped weapons that are not "designed" and "intended" to be fired from the shoulder. Reply 3. But they offer no interpretive analysis to support that claim. And while Defendants explained how the statute's text, purpose, and prior judicial constructions support the Rule's conclusion that a brace-equipped weapon can be a rifle, and thus a short-barreled rifle, under the NFA, Defs.' Br. 12–16, Plaintiffs do not cogently respond to any of Defendants' arguments. Although their reply largely repeats the same assertions from their opening brief, a few points warrant a response.

*First*, though the task of interpreting a statute begins with its text, Plaintiffs have no argument based on the relevant statutory language. Unlike the Rule, nowhere do Plaintiffs attempt to explain what it means for "a weapon" to be "designed," "made," and "intended to be fired from the shoulder," or how to determine whether a weapon satisfies those conditions. 26 U.S.C. § 5845(c); *see also Watterson v. ATF*, 2024 WL 897595, at *14 (E.D. Tex. Mar. 1, 2024). Indeed, rather than engage in statutory interpretation, Plaintiffs tilt at windmills, arguing that the Rule misconstrues the definition of "rifle" to include brace-equipped weapons that are merely *capable* of shoulder firing. Reply 3–4, 8–9. But the Rule does no such thing. Defs.' Br. 15.

*Second*, Plaintiffs' discussion of *Sig Sauer, Inc. v. Brandon*, 926 F.3d 598 (1st Cir. 2016), and *Posters 'N' Things v. U.S.*, 511 U.S. 513 (1994), focuses on immaterial factual distinctions between those cases and this one without engaging with the interpretive principle those cases support—*i.e.*, that discerning intent based on objective evidence is a widely accepted approach, including in the NFA context. Defs.' Br. 14–15.

*Finally*, in invoking the rule of lenity, Plaintiffs try to create ambiguity where there is none. Contrary to what they suggest, ATF never interpreted the statutory definition of "rifle" to categorically exclude brace-equipped weapons. Plaintiffs' repeated claim that the Rule reflects an about-face on that

3

basic statutory question is thus a fiction.

### III.   The Rule is not arbitrary or capricious.

Underlying Plaintiffs' arbitrary-and-capricious argument is the suggestion that ATF has acted in bad faith, and therefore, the Rule is arbitrary. This point is not only irrelevant, but inaccurate, as the agency made every attempt to promulgate the Rule consistent with principles of good governance. Though not legally required, ATF went through notice and comment specifically to engage the regulated public and ensure those affected had fair notice of its approach. 88 Fed. Reg. at 6552. It considered thousands of comments and issued a rule that thoroughly delineates its methodology. And it explained the basis for the Rule: it had come to ATF's attention that braces were not being used to "assist people with disabilities or limited strength and mobility," as the original prototype design had indicated, *id.* 6482, but were instead "being used with firearms extensively to create short-barreled rifles without following NFA requirements," *id.* 6494—that is, to evade federal law.

That the Rule reflects a change from some of ATF's past classifications likewise does not render it arbitrary. Reply 5. When Congress charges an agency with administering a statute, it obligates that agency to determine how that statute applies to new circumstances or in light of new information—like that a product is being used to evade statutory requirements. Accordingly, an agency may sometimes need to change its position. When it does, "it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better," as long as the agency accounts for any serious reliance interests engendered by its previous position. *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009). As explained, Defs.' Br. 17–23, ATF has more than done so here.

Plaintiffs also take issue with the allegedly heavy burden of NFA registration. But ATF appropriately considered those burdens in deciding whether to adopt the Rule and took steps to minimize them. *Id.* 19–20. And regardless, those requirements "merely" reflect "additional costs and

logistical hurdles that all citizens" must bear, *Bezet v. U.S.*, 714 F. App'x 336, 340 (5th Cir. 2017), and do not somehow render the Rule arbitrary.

Next, Plaintiffs criticize the Rule's failure to adopt precise metrics, but their argument misses the point. Reply 12–13. The Rule derives from the NFA's text, which defines a "rifle" as a weapon designed, made, and intended to be fired from the shoulder, and that inquiry does not lend itself to reliance on precise measurements. Also, Plaintiffs' vagueness concerns are exaggerated, as Plaintiffs cannot identify a single brace-weapon configuration that cannot be clearly classified under the Rule.

Lastly, Plaintiffs criticize the Rule's failure to perform historical analysis under *Bruen*, but their argument misstates that case. Reply 13–14 (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)). *Bruen* first considers whether a "regulated activity falls within" the Second Amendment's "scope." *Second Amendment Found. v. ATF (SAF)*, 2023 WL 7490149, at *11 (N.D. Tex. Nov. 13, 2023). And only if the Second Amendment is implicated must the regulation be consistent with this Nation's historical tradition of firearms regulation. *Id.* Here, ATF reasonably concluded that weapons the NFA regulates, like "short-barreled rifles, fall outside" the Second Amendment's "scope," 88 Fed. Reg. 6548, because they are dangerous and unusual weapons—an unprotected category derived from historical tradition. "Nothing in *Bruen* requires" that one "proceed to the second step of the inquiry where the first step is not met," *SAF*, 2023 WL 7490149, at *12, or that ATF reinvent the historical wheel. Regardless, as explained *infra*, any error in ATF's analysis would be harmless because the Rule does not violate the Second Amendment.

## IV.    The Rule complies with the APA's procedural requirements.

Plaintiffs contend that the Fifth Circuit's decision in *Mock v. Garland*, 75 F.4th 563 (5th Cir. 2023), "is binding," and Defendants' logical-outgrowth arguments are therefore "foreclosed." Reply 14. But *Mock* reviewed the district court's denial of a preliminary injunction, and a decision "whether to grant or deny a preliminary injunction … does not limit or preclude the parties from litigating the

merits." *Sherley v. Sebelius*, 689 F.3d 776, 781 (D.C. Cir. 2012); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Consideration of Defendants' arguments is particularly warranted because the *Mock* Court did not have the full administrative record before it, nor developed briefing regarding the legislative-interpretive rule distinction. *Mock*, 75 F.4th at 590 (Higginson, J., dissenting). *Mock* also adopted a new legal test for determining whether a rule is legislative. While Defendants maintain that test is clearly erroneous and conflicts with binding Fifth Circuit precedent, at minimum, it represents an intervening change of law, and Defendants must be given the opportunity to brief its application to avoid manifest injustice. *U.S. v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

As explained, Defs.' Br. 23–29, the Rule is not subject to notice-and-comment requirements as an interpretive rule and is, at any rate, a logical outgrowth of ATF's proposed rule. Additionally, Plaintiffs still have failed to identify a single way that ATF's rulemaking process has prejudiced them.

## V.    Neither the Rule nor the NFA violates the Second Amendment.

Plaintiffs contend that stabilizing braces are bearable arms under the Second Amendment, that short-barreled rifles are not dangerous and unusual weapons, and that the Rule (or, alternatively, the NFA) violates the Second Amendment by requiring registration and taxation of those weapons. Reply 16–26. Their arguments fail on each score.

*Accessories versus bearable arms.* Plaintiffs dispute that stabilizing braces are accessories not protected by the Second Amendment, citing *U.S. v. Miller*, 307 U.S. 174 (1939). Reply 16. But *Miller* did not address whether firearm *accessories* are bearable arms under the Second Amendment. And Plaintiffs do not attempt to distinguish braces from silencers, which similarly "cannot cause harm on [their] own" and are not "of any use 'independent of [their] attachment to a firearm.'" *SAF*, 2023 WL 7490149, at *13 (collecting cases); *see also U.S. v. Royce*, 2023 WL 2163677, at *4 (D.N.D. Feb. 22, 2023); *U.S. v. Berger*, 2024 WL 449247, at *15–17 (E.D. Pa. Feb. 6, 2024). Instead, they argue for a right to possess any "ancillary equipment" "useful" for the operation of a weapon. Reply 16. But

nothing in the record "indicates that braces are necessary" to use a firearm. *SAF*, 2023 WL 7490149, at *13; *accord Firearms Regul. Accountability Coal. v. Garland*, 2023 WL 5942365, at *5 (D.N.D. Sep. 12, 2023). Therefore, braces are not bearable arms protected by the Second Amendment.

<u>*Dangerous and unusual weapons.*</u> Rather than contest that some brace-equipped weapons are short-barreled rifles under the NFA, Defs.' Br. 13, Plaintiffs dispute only the extent to which the Second Amendment protects dangerous and unusual weapons, whether short-barreled rifles are dangerous and unusual, and whether the NFA is constitutional. Reply 18–19.

Plaintiffs' argument that the Second Amendment permits only limitations on the *public carrying* of dangerous and unusual weapons is inconsistent with Fifth Circuit precedent. *E.g.*, *Hollis v. Lynch*, 827 F.3d 436 (5th Cir. 2016). Indeed, no case appears to support that contention. Rather, courts have routinely recognized—including post-*Bruen*—that the Second Amendment does not protect dangerous and unusual weapons. *E.g.*, *U.S. v. Simien*, 655 F. Supp. 3d 540, 554 (W.D. Tex. 2023).

Moreover, every court to consider whether short-barreled rifles are dangerous and unusual weapons, both before and after *Bruen*, has held that they are. *E.g.*, *U.S. v. Gonzales*, 2011 WL 5288727, at *3–4 (D. Utah Nov. 2, 2011); Defs.' Br. 31 n.9 (collecting cases). To hold otherwise could cast doubt on criminal indictments, convictions, and sentences across the country, even in cases where as-applied challenges under the Second Amendment have been rejected. And that a short-barreled rifle is made from a stabilizing brace rather than a shoulder stock is immaterial. *Watterson*, 2024 WL 897595, at *18. The resulting weapon satisfies the statutory definition and possesses the characteristics that led Congress to regulate short-barreled rifles in the first place: the ability to "be easily concealed like a handgun" and the "firepower and accuracy of a rifle." 88 Fed. Reg. at 6498.

Plaintiffs also do not dispute that unlawful possession of a short-barreled rifle is a crime of violence for purposes of a sentencing enhancement, underscoring their dangerous character. *U.S. v. Golding*, 332 F.3d 838 (5th Cir. 2003). Indeed, Texas has historically criminalized the possession of

unregistered short-barreled rifles. *E.g.*, *Campbell v. Texas*, 633 S.W.2d 592, 593 (Tex. App. 1982); *see also* Texas Penal Code § 46.05(a)(1)(C). And brace-equipped short-barreled rifles have been used in several recent mass shootings, further demonstrating that these weapons are dangerous and unusual. *SAF*, 2023 WL 7490149, at *14.

    *Registration requirements.* Even if the Court determines that short-barreled rifles are not dangerous and unusual, Plaintiffs' claims still fail because the NFA does not bar possession of these firearms, but simply requires their registration and taxation. Defs.' Br. 35; *see also U.S. v. Shepherd*, 2024 WL 71724, at *1 (S.D. Miss. Jan. 5, 2024). Indeed, no court has ever struck down the NFA's tax and registration requirements as unconstitutional. And here, Plaintiffs have not shown that the NFA's requirements are outside the scope of regulation that the Second Amendment permits. Defs.' Br. 35.

    *History.* Plaintiffs don't dispute the existence of colonial era taxation, registration, and inspection regulations, arguing instead that Defendants' historical analogues fail *Bruen*'s "'how' and 'why' metrics" and are otherwise untimely or too dissimilar to support the NFA's regulation of short-barreled rifles. Reply 22–26. At bottom, Plaintiffs' arguments suggest that Defendants are required to identify a historical *twin* for the NFA, something *Bruen* squarely rejects. 597 U.S. at 30. On the contrary, because the NFA's requirements are consistent with the Nation's historical tradition of firearm regulation, they "pass constitutional muster." *See U.S. v. Holton*, 639 F. Supp. 3d 704, 711 (N.D. Tex. 2022); *see also U.S. v. Trujillo*, 670 F. Supp. 3d 1235, 1242–43 (D.N.M. 2023).

    *First*, the "how" of Defendants' historical analogues are not materially different from the NFA. They often applied to a broader class of weapons and included individualized, door-to-door inspections. Defs.' Br. 35. The challenged portions of the NFA, by comparison, only apply to a subset of dangerous weapons, and the registration requirements can often be completed using an electronic form. And far from standing alone, these regulations existed in nearly half of the colonies around the time of the Second Amendment's ratification. Defs.' Br. 35; *U.S. v. Bradley*, 2023 WL 2621352, at *4

(S.D. W. Va. Mar. 23, 2023) ("[The] Founders did not shy away from regulating the trade and movement of firearms."). Thus, the NFA's registration and taxation requirements impose a *lesser*, or at most "comparable," burden as these historical regulations. *E.g.*, *Holton*, 639 F. Supp. 3d at 712; *Trujillo*, 670 F. Supp. 3d at 1243. Plaintiffs identify no case holding otherwise.

*Second*, the "why" of Defendants' historical analogues also satisfies *Bruen*. Like these historical regulations, the NFA's taxation and registration requirements do not disarm anyone. *U.S. v. Sredl*, 2023 WL 3597715, at *4 (N.D. Ind. May 23, 2023) ("[The NFA] doesn't prohibit" but merely "regulates unregistered possession of firearms."). Rather, they facilitate firearms tracing and otherwise ensure dangerous individuals do not obtain firearms—policy goals reflected in these historical analogues. *See Trujillo*, 670 at 1243; *Holton*, 639 F. Supp. 3d at 712; *see also U.S. v. Padgett*, 2023 WL 3483929, at *9 (D. Alaska Jan. 4, 2023) (highlighting "significant" colonial-era firearm regulations, like "registration and safety requirements," "designed to ensure responsible and safe gun ownership"); *U.S. v. Dangleben*, 2023 WL 6441977, at *8 (D.V.I. Oct. 3, 2023) ("[Colonial-era] muster and registration laws, in addition to taxes on" firearms, "allowed the government to … track the location of the firearms."); *U.S. v. Dixson*, 2023 WL 7416327, at *6 (E.D. Mo. Aug. 30, 2023). Given the failure of various as-applied challenges to the NFA's requirements, Plaintiffs cannot show that those requirements can never be applied constitutionally.

## VI.    The Rule is not unconstitutionally vague.

Plaintiffs concede they lack standing to bring their vagueness challenge, as they neither contest that the Rule applies clearly as to Brown's weapon, nor argue that ambiguities in the Rule prevent any other Plaintiff from determining the classification of their weapon. *Compare* Pls.' Reply 26–27, *with* Defs.' Br. 40. And because Plaintiffs have still failed to identify a single weapon-brace configuration to which the Rule cannot be applied clearly, their facial challenge fails. *Wash. St. Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

Additionally, contrary to Plaintiffs' assertions, Defendants' arguments rebut *Mock*'s dicta regarding vagueness. As explained, Defs.' Br. 42–43, the Rule's factors identify straightforward goals that provide ample guidance regarding when a brace-equipped weapon is a short-barreled rifle.

Lastly, while Plaintiffs emphasize potential criminal implications, the Rule does not impose criminal consequences—the NFA does. 26 U.S.C. §§ 5861, 5871. Criminal prosecutions are brought pursuant to the NFA, and all elements of any relevant criminal charge—including whether a weapon is a short-barreled rifle—must be proven beyond a reasonable doubt, with no deference to the Rule or ATF's interpretation. Thus, Plaintiffs' arguments on this score are overblown.

## VII.   The NFA and the Rule are otherwise constitutional.

*Taxing power.* Plaintiffs identify no case holding that the NFA's tax on short-barreled rifles exceeds Congress's taxing power. As explained, Defs.' Br. 43–45, there is judicial consensus that the NFA is a valid exercise of the taxing power.

*Separation of powers.* Plaintiffs' "separation of powers" claims are nothing more than their statutory objections repackaged under separation-of-powers principles, and fail for the same reasons. Plaintiffs' reply fails to address the "intelligible principles" standard, or show that the Rule bears the extraordinary features of policies found to violate the major questions doctrine. Defs.' Br. 47–48.

## IX.   Any relief should be narrowly tailored to redress Plaintiffs' injuries.

### A.   Universal vacatur of the Rule is unwarranted.

Plaintiffs insist that this Court should universally vacate the Rule. But across two briefs, they have not justified that far-reaching remedy or explained how, in this case, it would comport with fundamental constraints on the Court's remedial authority. Instead, the upshot of their argument is simple: Because the Fifth Circuit has, at times, described vacatur as the "default" remedy in APA cases, this Court must reflexively vacate the Rule universally, without paying mind to the consequences of such a sweeping remedy or whether it is necessary to provide Plaintiffs complete relief. But universal

vacatur of the Rule is neither required, necessary, or justifiable, Defs.' Br. 48–50, and Plaintiffs' contrary arguments are unpersuasive.

*First*, Plaintiffs suggest that this Court must universally vacate the Rule regardless of whether that relief is necessary to redress their asserted injuries. Reply 31–32. But it is this Court's constitutional obligation to ensure that any remedy it enters is narrowly "tailored to redress" Plaintiffs' "particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018)—an obligation reinforced by the equitable principle that "[a]ny remedy" be no broader "than necessary" to provide a plaintiff complete relief, *U.S. v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment). Plaintiffs do not contend that the APA uprooted or modified those constitutional or equitable limits on this Court's remedial authority. Nor do they dispute that vacatur, like all equitable remedies, is subject to them.[2] *Cargill v. Garland*, 57 F.4th 447, 472 (5th Cir. 2023) (explaining that any remedy in an APA case must be narrowly tailored). And so whether vacatur has been described as a "default" remedy or not, it is still Plaintiffs' burden to show that, in *this* case, universal vacatur would be consistent with both constitutional and equitable remedial principles. *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 389 (5th Cir. 2023) ("[At the merits stage], the plaintiffs will have to *prove* that whatever [relief] they request is broad enough to protect against their proven injuries and no broader."). But Plaintiffs offer no argument or evidence on that score. Accordingly, there is nothing in this record on which this Court can conclude that universal vacatur is necessary—or that a party-specific remedy would be inadequate—to provide Plaintiffs complete relief.

*Second*, although several courts have determined that other plaintiffs challenging the Rule are likely not entitled to relief, Plaintiffs encourage this Court to brush that consideration aside and universally vacate the Rule anyways. But Fifth Circuit precedent counsels against that approach. In

---

[2] *E.g.*, *Texas*, 599 U.S. at 702 (Gorsuch, J., op.) (explaining that, if there is a power to vacate agency action under § 706, it is an "equitable power").

*Louisiana v. Becerra*, 20 F.4th 260 (5th Cir. 2021), the Fifth Circuit addressed "whether one district court should make a binding judgment for the entire country." *Id.* at 263. The court answered that question in the *negative*, principally because "[o]ther courts" were simultaneously "considering the[] same issues," the "ultimate resolution" of which would "benefit from the airing of competing views" among sister courts. *Id.* at 263–64. So too here. And that this case is now at the merits stage does not mean this Court should toss aside principles of judicial comity and restraint in determining a proper remedy. In fact, the exact opposite is true. *Texas*, 599 U.S. at 703 (Gorsuch, J., op.) ("At a minimum,… courts must carefully consider" the effects of vacatur, including that it "can stymie the orderly [judicial] review of important questions."); *Louisiana*, 20 F.4th at 264 ("[This issue's] *ultimate* resolution will benefit from the airing of competing views in our sister circuits." (emphasis added)); *cf. Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring) ("[Universal remedies] short-circuit the decisionmaking benefits of having different courts weigh in on vexing" legal questions.).

*Finally*, Plaintiffs at least concede that universal vacatur is not *required* to remedy an APA violation, as they previously argued. Pls. MSJ 15–16, ECF No. 85. In backpedaling, however, they suggest that the only alternative to universal vacatur is an equitable remedy that the Fifth Circuit has described as "remand without vacatur." *Id.* But that's incorrect. As the Fifth Circuit explained in *Cargill*, there are several remedies "more limited" than vacatur (*i.e.*, "injunctive, declarative, or otherwise") that may be "appropriate" to redress an APA violation. 57 F.4th at 472. So contrary to Plaintiffs' suggestion, if this Court were to find an APA violation, it's not stuck choosing between universally vacating the Rule or remanding without vacatur.

At any rate, Plaintiffs have hardly rebutted that "remand without vacatur" would be the proper remedy if this Court were to find, *e.g.*, that the Rule violates the logical-outgrowth doctrine or that ATF did not adequately explain its actions. Defs.' Br. 50. That remedy is "generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an

opportunity to do so" and where vacatur would be "disruptive." *Texas v. U.S.*, 50 F.4th 498, 529 (5th Cir. 2022). And although they oppose remand without vacatur, Plaintiffs do not dispute that ATF could cure certain alleged flaws in the Rule through further consideration. If, for example, the flaw is that the Rule violates the logical-outgrowth doctrine, the Fifth Circuit has already found that such an error can be remedied on remand without vacatur. *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 383, 389–90 (5th Cir. 2021). And if the flaw is that ATF did not consider an issue or adequately explain its actions, that too is easily fixable and would not justify vacating the Rule. *Id.* at 389–90 (remanding without vacatur to allow the agency to consider an issue); *Cent. & S.W. Servs. v. EPA*, 220 F.3d 683, 692, 702 (5th Cir. 2000) (remanding without vacatur to allow the agency to explain its actions, holding that "failure to explain [an action] does not require vacatur").

As for its disruptive consequences, vacatur would not only countermand the decisions of sister courts, but would also sow confusion within the regulated community by returning it to a regime without generally applicable guidelines. Defs.' Br. 50. Plaintiffs offer no response to those arguments, conceding this point. *Brown v. McLane*, 807 F. App'x 410, 411 n.3 (5th Cir. 2020).[3]

### B.    Plaintiffs are not entitled to their proposed injunction.

Although Plaintiffs ask the Court to enjoin the Rule's enforcement nationwide, they don't dispute that extending relief to non-parties would exceed this Court's "judicial role." *Texas v. ATF*, 2023 WL 7116844, at *12 (S.D. Tex. Oct. 27, 2023). But as explained, Defs.' Br. 51–56, even a party-specific injunction would be improper here, because Plaintiffs have failed to satisfy *any* of the prerequisites to permanent injunctive relief.

*First*, by failing to respond to Defendants' arguments that it lacks standing and will suffer no

---

[3] Plaintiffs insist that universal vacatur would be *less* burdensome than party-specific relief in this case, because enjoining the Rule's enforcement against only Plaintiffs would make the NFA's "reach" dependent upon whom it was being applied. Pls.' Reply 32. Not so. Enjoining *the Rule's* enforcement would not prevent ATF from enforcing *the NFA*.

irreparable injury absent a permanent injunction, *id.* at 51–52, Texas has conceded both points.

*Second*, GOA and Brown have no cogent response to the fact that enjoining the Rule's enforcement would not change anyone's *statutory* obligations with respect to any brace-equipped short-barreled rifles. Defs.' Br. 52–53. While they try to attribute those obligations to the Rule by suggesting that ATF previously considered brace-equipped pistols categorically not subject to the NFA, Reply 33, that argument is divorced from reality, AR 18–21, 22–25, 54–57, 70–91, 195, 285–293, 387–413, 466–488 (numerous determinations between 2014 and 2020 that particular brace-equipped pistols were short-barreled rifles subject to the NFA).

*Third*, Plaintiffs do not seriously dispute that the compliance costs they cite are merely theoretical. Defs.' Br. 53. While they cite estimated public costs from the Rule's regulatory impact analysis, Reply 34, that says nothing about whether Brown or any GAO member will actually incur compliance costs. And even assuming otherwise, Plaintiffs have submitted no evidence that those costs would be more than de minimis. Defs.' Br. 53.[4]

*Fourth*, as explained, Defs.' Br. 55, the Rule both provides regulatory clarity and benefits public safety by reducing circumvention of the NFA's requirements, which Congress designed to minimize the proliferation of weapons uniquely susceptible to criminal misuse, like short-barreled rifles. In response, Plaintiffs maintain that the Rule's public-safety rationale "has no basis in reality," Reply 35—an unsettling argument in light of recent mass shootings carried out with braced-equipped weapons. Defs.' Br. 7; Defs.' Suppl. Br. 6 n.4, ECF No. 74.

*Finally*, Plaintiffs' reliance on *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023), is misplaced. That case addresses none of the equitable concerns with extending relief to all of GOA's members. Defs.' Br. 55–56

---

[4] Plaintiffs don't dispute that the speculative threat of criminal sanction is neither likely nor imminent for any Plaintiff, Defs.' Br. 54, thus conceding the point.

14

## CONCLUSION

The Court should grant summary judgment in Defendants' favor on all of Plaintiffs' claims.

Dated: March 4, 2024                    Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN (MT Bar No. 55816869)
TAYLOR PITZ (CA Bar No. 332080)
FAITH E. LOWRY (TX Bar No. 24099560)
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 598-9280
Email: jody.d.lowenstein@usdoj.gov

*Attorneys for Defendants*

15

## CERTIFICATE OF WORD COUNT

I certify that the foregoing document is 4,935 words, excluding the portions excepted by Local Rule 18(c).

## CERTIFICATE OF SERVICE

On March 4, 2024, I electronically submitted the foregoing document with the Clerk of Court for the U.S. District Court, Southern District of Texas, using the Court's electronic case filing system. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Jody D. Lowenstein*
JODY D. LOWENSTEIN
Trial Attorney
U.S. Department of Justice