UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS,<br>GUN OWNERS OF AMERICA, INC.,<br>GUN OWNERS FOUNDATION, and<br>BRADY BROWN,<br><br>Plaintiffs,<br><br>v.<br><br>BUREAU OF ALCOHOL, TOBACCO,<br>FIREARMS AND EXPLOSIVES, UNITED<br>STATES DEPARTMENT OF JUSTICE, and<br>ROBERT CEKADA,[1] in His Official Capacity<br>as DIRECTOR OF ATF,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 6:23-cv-00013 |

**PLAINTIFFS' SUPPLEMENTAL BRIEF**

Pursuant to this Court's Order dated October 12, 2026 (ECF No. 114), Plaintiffs State of Texas, Gun Owners of America, Inc., Gun Owners Foundation, and Brady Brown submit the following supplemental brief to address the Court's four questions regarding recent legal developments with the National Firearms Act ("NFA").

As this Court noted, (i) Congress recently "reduced . . . making and transfer taxes" for certain NFA firearms "to zero," (ii) the Northern District of Texas subsequently declared the NFA's registration requirements for these untaxed firearms unconstitutional and "enjoin[ed] their enforcement against specified parties," and thereafter, (iii) Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") "announced a nationwide enforcement policy concerning certain

[1] Director Robert Cekada is automatically substituted pursuant to Fed. R. Civ. P. 25(d).

NFA requirements." ECF No. 114 at 1. Nevertheless, these events have not obviated the need for Plaintiffs to obtain relief from this Court.

1. **Whether, and to what extent, these developments affect the justiciability of Plaintiffs' claims, identifying each pleaded claim and requested remedy, if any, that remains live.**

First, although not one of the developments above, the district court's vacatur of the Rule in *Mock v. Garland*, No. 4:23-CV-00095-O, 2024 U.S. Dist. LEXIS 105230 (N.D. Tex. June 13, 2024), affects the justiciability of a subset of Plaintiffs' Administrative Procedure Act ("APA") and constitutional claims. Specifically, Count One (APA—logical outgrowth), Count Five (APA—effective date), and Count Seven (Fifth Amendment—self-incrimination) of Plaintiffs' Complaint were challenges to various defects of the Rule itself and, because of its vacatur, they are now moot. Additionally, Count Nine (U.S. Const. art. I, § 8—taxing power) and Count Ten (U.S. Const. art. I, § 9—unapportioned direct tax) of Plaintiffs' Complaint were addressed by Congress's intervening NFA tax reduction, and they likewise are now moot. However, even if Defendants are currently exercising discretion to decline to require NFA registration under federal law, Defendants' proper classification of braced and short-barreled firearms (and whether such classification complies with the statute) still matters, for several reasons laid out below. Thus, any atextual expansion of the statutory definition of "short-barreled rifle" by ATF will directly result in the continued, unnecessary federal registration of braced pistols, and several resulting harms to Plaintiffs. And as this Court recognized, such "compliance will almost always come at a cost," even with the $200 tax waived. ECF No. 80 at 23.[2] Accordingly, the following claims remain

[2] Violating the NFA can lead to up to ten years' imprisonment. 26 U.S.C. § 5871, It also allows other penalties, including a fine of up to $250,000 for an individual or up to $500,000 for an organization. 18 U.S.C. § 3571(b)-(c).

justiciable:

**Count Two (APA).** Plaintiffs challenged as "arbitrary, capricious, [an] abuse of discretion, [and] not in accordance with law" Defendants' adoption of "entirely new approaches and practices with respect to interpreting and applying the statutes [ATF] is tasked with enforcing." Compl. ¶ 478. To that end, Defendants' interpretation of the underlying statutes "adopts various vague and arbitrary standards and tests," which "conflict[] with the plain text of the statutes. . . ." *Id.* ¶¶ 479, 480. As Plaintiffs have explained, such interpretation continues to this day, despite the Rule's vacatur. *See* ECF No. 104 at 4-7 (detailing Defendants' continued use of the Rule's legal theories to target gun owners); *see also* Removing Factoring Criteria for Firearms With Attached "Stabilizing Braces," 91 Fed. Reg. 24453, 24456 (May 6, 2026)[3] (to be codified at 27 C.F.R. pts. 478, 479) (Defendants recently claiming each braced pistol is "unique in some way," requiring "case-by-case classifications based on the unique designs of each firearm").[4] Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement violates the APA for being "unlawful," "*ultra vires*," "not in accordance with law," and "arbitrary and capricious." Compl., Prayer for Relief ¶¶ 13, 1, 2, 3.

**Count Three (APA).** Plaintiffs challenged Defendants' "revers[al]" of "longstanding policy,"

[3] Available at https://www.govinfo.gov/content/pkg/FR-2026-05-06/pdf/2026-08930.pdf.

[4] This is not the only ATF NPRM that has sought to re-adopt essentially the same regime as a vacated rule. As Judge Kacsmaryk of the Northern District of Texas recently explained, "ATF's new NPRM even doubles down on the substance of the old Rule, retaining, for example, language from the old Rule . . . . The Court's 2024 and 2026 Orders were clear: ATF violated the APA . . . so the Rule cannot stand. Defendants cannot avoid the force of those Orders by rearranging a few words between the old Rule and the new one." Order at 4-5, *Texas v. BATFE*, No. 2:24-cv-00089-Z (N.D. Tex. Aug. 13, 2026), ECF No. 185.

"alter[ation]" of the "classification of millions of lawfully purchased firearms," and "chief law enforcement officer notification requirement contained in 27 C.F.R. § 479.62(c)" as being "in excess of the authority Congress granted ATF. . . ." Compl. ¶¶ 489, 491, Prayer for Relief ¶ 12. Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement violates the APA for being "unlawful" and "*ultra vires*. . . ." *Id.*, Prayer for Relief ¶¶ 13, 1; *see also id.* ¶ 12. The Court has the authority to make a determination whether an agency has exceeded its statutory authority and acted *ultra vires*. *See, e.g.*, *Mittleman v. Postal Regulatory Comm'n*, 757 F.3d 300, 307, 411 U.S. App. D.C. 18 (D.C. Cir. 2014).

**Count Four (APA).** Plaintiffs challenged Defendants' interpretation of the statute as being violative of the Second and Fifth Amendments, as well as the constitutional separation of powers (discussed *infra*). Compl. ¶¶ 493, 495-96, 498. Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement violates the APA for being "contrary to constitutional right, power, privilege, or immunity." *Id.*, Prayer for Relief ¶¶ 13, 5.

**Count Six (Second Amendment).** Plaintiffs challenged Defendants' requirement that Plaintiffs register their braced pistols as short-barreled rifles, as "there is no historical analogue to regulate and require to be registered with the government" such firearms. Compl. ¶ 507. Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement "violates the right to keep and bear arms protected by the Second Amendment." *Id.*, Prayer for Relief ¶¶ 13, 6. The Court possesses an inherent power to

enjoin unconstitutional acts. *See Trudeau v. FTC*, 456 F.3d 178, 190 (D.C. Cir. 2006) ("[T]he court's power to enjoin unconstitutional acts by the government . . . is inherent in the Constitution itself."). Defendants argue, essentially, that Plaintiffs' rights may be violated by the ATF, and that Plaintiffs have no recourse against such an abuse of authority. This is simply not the law.

**Count Eight (Fifth Amendment—vagueness).** Plaintiffs challenged Defendants' failure to give "fair notice as to which firearms are subject to . . . registration" as short-barreled rifles "and which are not." Compl. ¶ 520. Critically, while Defendants' latest rulemaking on braces purports to eschew the Rule's factorial test, it actually adopts a far vaguer test than ever before. Indeed, despite vacatur of the Rule, Defendants now claim that each braced pistol is "unique in some way," requiring "case-by-case classifications based on the unique designs of each firearm" but this time declining to offer any criteria that might apprise gun owners of ATF's decision-making process. 91 Fed. Reg. at 24456. Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement "violates the Fifth Amendment's Due Process clause by being void for vagueness." *Id.*, Prayer for Relief ¶¶ 13, 8.

This is a separate constitutional claim that justifies retention of the case. Moreover, the Fifth Circuit has already stated that the ATF's actions and definitions "have not been a model of clarity." *Mock*, 75 F.4th at 571 (also labeling its determinations as "ad hoc" and stating that its "unifying logic was not always discernable"). ATF's change in statutory interpretation places Plaintiffs in jeopardy of being labeled felons on the basis of an unclear and confusing set of standards.

**Count Eleven (U.S. Const. art. I, §§ 1, 7—separation of powers).** Plaintiffs challenged

Defendants' reclassification of braced pistols as "an attempt by an administrative agency to implement policy change and enact omnibus federal gun control legislation through bureaucratic fiat, rather than through legislation." Compl. ¶ 540. Plaintiffs sought an injunction against Defendants "taking any action inconsistent with the rescission of the Final Rule"—*i.e.*, ongoing enforcement of the Rule's legal theories—and a declaration that such enforcement "violates the Separation of Powers doctrine embodied in the United States Constitution." *Id.*, Prayer for Relief ¶¶ 13, 10.

All told, because Defendants have continued to enforce the Rule's legal theories even after its vacatur, and indeed have promulgated a new proposed rule that adopts the same problems, a number of Plaintiffs' claims are not moot.

**2. Whether any Plaintiff in this action falls within the protection of the injunction entered in *Silencer Shop*, and the scope and effect of any such protection.**

**a. Not All Plaintiffs Possess Full Protection Under *Silencer Shop*.**

Most, but not all, of the Plaintiffs in this case possess varying levels of protection under the *Silencer Shop* injunction. First, the "members . . . both current and future" of Plaintiff Gun Owners of America ("GOA") are covered by the *Silencer Shop* injunction. *Silencer Shop Found. v. BATFE*, No. 6:25-CV-056-H, 2026 U.S. Dist. LEXIS 174125, at *92 (N.D. Tex. Aug. 5, 2026). Second, because Plaintiff Brady Brown is a member of GOA, he is covered by the *Silencer Shop* injunction. *See* Compl. ¶ 4. Third, the *Silencer Shop* court declined to extend protection to the supporters of Plaintiff Gun Owners Foundation ("GOF"). *See Silencer Shop*, 2026 U.S. Dist. LEXIS 174125, at *87. Fourth, Plaintiff State of Texas received clear protection under the *Silencer Shop* injunction with respect to its "agencies" and "political subdivisions." *Id.* at *92. However, currently pending before the *Silencer Shop* court is Plaintiff States' Motion for Clarification of Scope of Injunctive

Relief (ECF No. 144 in N.D. Tex. Case No. 6:25-cv-00056-H),[5] which asks that court to clarify whether its "injunction appl[ies] geographically to State Plaintiffs as sovereign states, or only to their agencies and political subdivisions?" *Id.* at 2. So it is as of yet unclear whether individual Texans are covered by the *Silencer Shop* injunction (to the extent they are not already members of Plaintiff GOA). All told, even if *Silencer Shop* somehow resolved the issues in this case (it does not), it would do so only for some Plaintiffs, and in varying degrees.

To be sure, this Court initially declined—in a preliminary posture—to extend the scope of its injunction to cover GOF supporters. ECF No. 80 at 16-17. To that end, this Court explained that "GOF could have representational standing on behalf of its supporters," but only that it had not offered sufficient allegations at that juncture, and this "Court note[d] that this is only the preliminary injunction stage of this case. Accordingly, any Party will be able to supplement the record with actual evidence satisfying the standing requirement at the final merits stage." *Id.* at 17, 20. And after initially extending protection to Texas governmental persons and entities (ECF No. 51 at 7), this Court found that Texas had not submitted sufficient evidence detailing its harms. ECF No. 80 at 19. Thereafter, during summary-judgment briefing, Plaintiff Texas further developed its standing (ECF No. 85 at 10-14), while "Plaintiffs [did] not address the issue of standing with respect to Plaintiff GOF" (*id.* at 16 n.6). Thus, there remain open questions on some of these Plaintiffs' standing, and Defendants' Motion to Dismiss is the inappropriate vehicle to resolve the matter.

**b. Scope and Effect of *Silencer Shop* Injunction.**

---

[5] Available at https://storage.courtlistener.com/recap/gov.uscourts.txnd.406278/gov.uscourts.txnd.406278.144.0.pdf.

As this Court has noted, with enactment of the One Big Beautiful Bill Act in 2025, Congress reduced the NFA's $200 tax to $0 with respect to silencers, short-barreled firearms, and "any other weapons." ECF No. 114 at 1. Additionally, ATF is currently enjoined from enforcing many of the NFA's provisions against various classes of persons and entities. *Id.*; *see Silencer Shop*, 2026 U.S. Dist. LEXIS 174125, at *92-93 (listing enjoined provisions). Finally, ATF recently issued guidance to the Second Amendment community, explaining that ATF and DOJ will be exercising enforcement discretion to not enforce the filing of NFA applications, associated fingerprinting and photographs, and firearm registration for the newly untaxed firearms described above. That said, even for Plaintiffs who have protection under the *Silencer Shop* injunction, neither that decision, nor Congress's zeroing of the tax, nor ATF's recent guidance provides Plaintiffs the full relief they have sought here, for several reasons.

First, even if Plaintiffs no longer must seek ATF approval to *make* or *transfer* short-barreled firearms, Plaintiffs still must seek ATF approval prior to *transporting* such firearms across state lines. *See* 18 U.S.C. § 922(a)(4). Indeed, ATF's recently issued FAQ makes clear that the "Form 20" interstate transport approval process will go on:

> May a person transport a short-barreled rifle or short-barreled shotgun in interstate commerce?
>
> Yes, but individuals must continue to file a Form 20 before engaging in interstate transportation of a short-barreled rifle or short-barreled shotgun, even if it is unregistered. 18 U.S.C. § 922(a)(4).[6]

Of course, if Plaintiffs' allegations here are correct—that their braced firearms are *not* short-barreled firearms subject to the NFA—then no Section 922(a)(4) compliance is necessary. Rather,

---

[6] *Update to NFA Transfer Guidance*, Bureau of Alcohol, Tobacco, Firearms and Explosives (Oct. 16, 2026), https://www.atf.gov/firearms/update-to-nfa-transfer-guidance.

Plaintiffs would be free to transport firearms equipped with stabilizing braces across state lines without obtaining ATF preclearance, and without violating Section 922(a)(4). As this Court already has found, compliance costs constitute harm for purposes of Article III standing. ECF No. 80 at 14. And being forced to seek and receive ATF approval before taking one's firearm on an interstate trip is certainly a compliance cost. Those harms will continue in spite of the recent developments identified in this Court's October 12, 2026 Order.

Second, to the extent that persons (including GOF supporters and Texas residents) are not currently covered by the *Silencer Shop* injunction, they obtain relief from the NFA *only* through DOJ and ATF's voluntary decision not to enforce the statute. *See* Open Letter to All Federal Firearms Licensees and the Public Regarding the National Firearms Act Making and Transfer Requirements for Certain Firearms and Devices (Oct. 9, 2026).[7] And while this is certainly a welcome respite from the NFA's onerous provisions, the exercise of such enforcement discretion is inherently nonpermanent and subject to change at any time *at the discretion* of Executive Branch officials. Indeed, ATF's recent guidance notes as much, explicitly anticipating that Defendants may stop exercising enforcement discretion in the future:

> What are the legal risks of making, possessing, or transferring $0-tax firearms?
>
> Material changes in legal or factual circumstances could cause NFA enforcement to resume. For example, Congress could impose a new tax on NFA firearms, the district court's injunction could be dissolved or overturned, or *the Department could rescind the enforcement guidelines*.
>
> The NFA treats unregistered firearms as contraband. Individuals who make, possess, transfer, or receive unregistered NFA firearms are subject to felony penalties and forfeitures. 26 U.S.C. §§ 5861, 5871, 5872; 49 U.S.C. §§ 80302,

[7] Available at https://www.atf.gov/media/30961/download.

80303.[8]

Were this eventuality to occur, then GOF supporters and perhaps Texas residents—along with tens of millions of other Americans—could find themselves at immediate risk of arrest, criminal prosecution, and seizure of their "unregistered firearms" as "contraband." At minimum, ATF no doubt would require such NFA firearms to be registered or destroyed. Of course, that is the very harm Plaintiffs alleged in this case—the Rule here unlawfully required registration of braced firearms, albeit with a waiver of the then-existing $200 tax.

Third, although the *Silencer Shop* injunction enjoined enforcement of many of the NFA's provisions, it did not enjoin them all. For example, ATF's guidance states:

> May a non-SOT FFL engage in the business of selling short-barreled rifles, short-barreled shotguns, silencers, or any other weapons?
>
> *Those who are engaged in the business of manufacturing NFA items have additional requirements that the district court did not enjoin*. Although Congress eliminated the making and transfer taxes for most NFA firearms, Congress did not eliminate the taxes for those engaged in the business of manufacturing, importing, or dealing in these firearms. 26 U.S.C. § 5801. Thus, *those engaged in the business of manufacturing, importing, or dealing must pay special (occupational) taxes* for each business activity that they conduct.
>
> FFLs who manufacture NFA firearms for customers have some *other obligations as well*. They must ensure that they have the appropriate manufacturing license under the GCA. They must serialize all firearms and silencers.[9]

In other words, for GOA members who are participants in the firearms industry, compliance costs abound. Indeed, the special occupational tax ("SOT") is currently $500 per year, and a Federal Firearms Licensee must obtain one before dealing in NFA firearms. Thus, for those GOA members,

---

[8] *Update to NFA Transfer Guidance*, Bureau of Alcohol, Tobacco, Firearms and Explosives (Oct. 16, 2026), https://www.atf.gov/firearms/update-to-nfa-transfer-guidance (emphasis added).
[9] *Id.* (emphasis added).

GOF supporters, and Texas industry members who manufacture, distribute, or sell firearms equipped with stabilizing braces, ATF's proper classification of those firearms as being outside the NFA makes a significant difference in how their business operates.[10]

Fourth, irrespective of the recent developments at the federal level, the laws of many states continue to ban or heavily restrict the possession and transfer of short-barreled firearms, affecting a large number of GOA and GOF's members and supporters. For example, ten states and the District of Columbia have banned short-barreled rifles and/or short-barreled shotguns entirely.[11] Yet only one of those states (Illinois) bans pistol-braced firearms explicitly.[12] To be sure, the laws of these states may contain independent definitions of short-barreled firearms, but not always. *At a minimum*, ATF's proper classification of these firearms under federal law plays a large role in their classification under state law, and an improper ATF determination that braced firearms are NFA firearms would effect a complete ban for the residents of many states.

Meanwhile, fully half the states, twenty-five, tie the legality of short-barreled firearms either to compliance with "federal law" or the "National Firearms Act," or even NFA registration

[10] Nor is a Federal Firearms Licensee generally considered to be "engaged in the business" of manufacturing firearms if he were to occasionally install a stabilizing brace on a pistol for a customer. But if that installation resulted in the creation of an NFA firearm (a short-barreled rifle), that would require payment of the SOT. Again, the proper classification of braced firearms still matters.

[11] *See* Minnesota (Minn. Stat. § 609.67); Washington (RCW § 9.41.190); California (Cal. Penal Code § § 33215); Delaware (11 Del. C. § 1444); Hawaii (Haw. Rev. Stat. § 134-8); Illinois (720 ILCS 5/24-1(a)(7)); Massachusetts (M.G.L. c. 269, § 10); New Jersey (§ 2C:39-3); New York (N.Y. Penal Law §§ 265.00(3), 265.01(1)); Rhode Island (R.I. Gen. Laws § 11-47-8); District of Columbia (D.C. Code § 7–2502.02).

[12] 720 ILCS 5/24-1.9(a)(1)(C)(vi).

explicitly.[13] Again, for many such persons, ATF's proper classification of pistol braces as falling outside the NFA may be dispositive as to whether such firearms can be lawfully possessed under state law without NFA compliance or registration. The *Silencer Shop* injunction alone, even combined with the budget cuts in the "One Big Beautiful Bill" and ATF's temporary exercise of discretion to not prosecute violations, cannot guarantee compliance with state law. Only a ruling that pistol-braced firearms are not regulated by the NFA can, along with an injunction preventing ATF from enforcing that claim.

**3. Whether Plaintiffs had standing to assert any remaining claims when this action commenced, whether they continue to present a live controversy, and how the October 9, 2026, enforcement policy affects mootness, including under the voluntary-cessation doctrine.**

First, Plaintiffs clearly had standing when this action commenced, and this Court already found as much. *See* ECF No. 51 at 3 n.3 ("Article III standing and irreparable harm . . . are fact-specific inquiries that the private Plaintiffs have satisfied."); *see also* ECF No. 80 at 22 n.10 ("Plaintiffs Brown and GOA have established standing").

Second, Defendants' recent change in NFA enforcement policy does not alter their interpretation of the statutory text as applied to braced firearms at issue here. As explained *supra*, Defendants' continued application of the Rule's legal theories—*i.e.*, their interpretation of the

---

[13] Alabama (Code of Alabama § 13A-11-63); Arizona (A.R.S. §§ 13-3101, 13-3102); Connecticut (Conn. Gen. Stat. § 53a-211); Iowa (Iowa Code § 724.1C); Missouri (RSMo § 571.020); Virginia (Va. Code. § 18.2-300); Michigan (MCL § 750.224b); Oklahoma (21 O.S. § 1289.18); Florida (Fla. Stat. § 790.221); Nebraska (Neb. Rev. Stat. § 28-1203); North Dakota (N.D.C.C. § 62.1-05-01); Pennsylvania (18 Pa.C.S. § 908); North Carolina (N.C. Gen. Stat. § 14- 288.8); Alaska (Alaska Stat. § 11.61.200); Montana (MCA § 45-8-340); Georgia (O.C.G.A. §§ 16-11-122, 16-11-124); Louisiana (La. R.S. § 40:1785); Maryland (Md. Criminal Law Code Ann. § 5-203); Nevada (NRS §§ 202.375, 202.350); Oregon (ORS § 166.272); South Carolina (S.C. Code § 16-23-250); South Dakota (SDCL § 22-14-6); Wisconsin (Wis. Stat. § 941.28); Ohio (O.R.C. 2923.11); Colorado (Colo. Rev. Stat. § 18-12-102).

statutory text—has real-world consequences, which continue to harm Plaintiffs irrespective of Defendants' NFA enforcement policy. Moreover, even if Defendants will not prosecute the unregistered possession of short-barreled firearms (for now), such possession remains a crime because the underlying statute remains on the books. Plaintiffs have a right to know whether their conduct (possession of braced pistols) is a crime *at all*, and they seek that clarity here.

Third, a live controversy remains. As "'long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) (cleaned up) (quoting *Dierlam v. Trump*, 977 F.3d 471, 476-77 (5th Cir. 2020)). Irrespective of Defendants' present enforcement priorities, a declaration in this case would clarify whether braced firearms are subject to NFA registration, the unregistered possession of which remains a crime under federal law and the laws of many states, and whose interstate transportation is restricted by federal law. Accordingly, whether Defendants' legal theories comply with the statute and Constitution will have real-world effects, including the need for continued federal registration of braced pistols to effect compliance with state law.

Finally, Defendants' recent adoption of their criminal enforcement policy is quintessential voluntary cessation, and "'[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 673 (5th Cir. 2023). As Defendants themselves admit, "the Department could rescind the enforcement guidelines" in the future, expressly reserving the option to do so.[14] Thus, it is not "'*absolutely* clear that the allegedly wrongful behavior could not

---

[14] *Update to NFA Transfer Guidance*, Bureau of Alcohol, Tobacco, Firearms and Explosives (Oct. 16, 2026), https://www.atf.gov/firearms/update-to-nfa-transfer-guidance.

be reasonably expected to recur,'" *Speech First, Inc. v. Fenves*, 979 F.3d 319, 328 (5th Cir. 2020), since Defendants *themselves* anticipate that it might.

**4. Whether amended or supplemental pleadings, or additional jurisdictional evidence, are necessary to resolve issues of standing, mootness, or any of the other issues identified above.**

Plaintiffs would be happy to submit an additional short declaration from Gun Owners Foundation, explaining that some of its supporters serve on its board, that donations from its supporters finance its activities and litigation, and that GOF considers those who financially support the organization to constitute its "supporters," akin to the members of a traditional membership organization. Other courts have found GOF to have standing on these bases. *See, e.g.*, *Texas v. BATFE*, 737 F. Supp. 3d 426, 438 (N.D. Tex. 2024); *Silencer Shop*, 2026 U.S. Dist. LEXIS 174125, at *23.

Respectfully submitted,

Dated: October 26, 2026

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

ROB FARQUHARSON
Deputy Attorney General for Legal Strategy

MICHAEL C. COTTON
Chief, Special Litigation Division

*/s/ Zachary Berg*
ZACHARY BERG
Special Counsel
Texas Bar No. 24107706
SDTX Bar No. 3481711
zachary.berg@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512) 463-2100

***Counsel for the State of Texas***

*/s/ Gilbert J. Ambler*
GILBERT J. AMBLER
Virginia Bar No. 94325
Southern District of Texas No. 3834055
210 South Braddock Street
Winchester, VA 22601
(540) 550-4236
gilbert@amblerlawoffices.com

***Counsel for Plaintiffs Brady Brown, Gun Owners of America, Inc., and Gun Owners Foundation***